## SMITH v. MINOR.

1. Simple fornication, without issue born, is not an indictable offence under the act of assembly. Charging a single woman with being with child of a bastard, sufficient to sustain an action for slanderous words.

2. After referees appointed by consent, and award made, it is too late to object to the declaration.

3. On motion to set aside report of arbitrators, the sufficiency of the declaration cannot be inquired into.

4. Every intendment will be made by a court to support an award.

---

This was an action of slander, brought by Mary Smith against Isaac Minor. The declaration contained two counts. The first count, after the usual allegations of the plaintiff's good name, and of her being unmarried and sole, &c., charged that the defendant, "maliciously intending to injure the plaintiff in her good name, and to subject her to the pains and punishments of the laws and statutes of this state made against immorality and fornication, on the 1st of January, 1788, at Trenton, &c., did falsely and maliciously report and publish, &c., these words: 'Mary Smith,' (the said Mary meaning,) 'is with child by Stephen Jones,' (meaning that the said Mary had been begot with child by one Stephen

Jones.") The second count laid the words thus: "'Ezekiel Smith's daughter,' (the said Mary meaning,) 'is like to have a little one,' (meaning that the said Mary was with child of a bastard;") [17] and the declaration concluded for general damages. To this the defendant pleaded "not guilty." Afterwards, by consent of parties and their attorneys, the matters in difference were "referred to the final end and determination" of three referees in the usual form. The referees made their report to April Term, 1789, under their hands and seals, which states, that "having heard the proofs and allegations of both the parties, they do find, award, report, and determine, that the defendant, Isaac Minor, is guilty of speaking and publishing the slanderous words mentioned in the plaintiff's declaration, in manner and form as he stands charged; and we assess the damages which the plaintiff hath sustained by reason thereof, at the sum of £100, besides costs," &c.

In the same term, the defendant, by his guardian and counsel, took a rule to show cause why this report should not be set aside, and filed the following reasons:

1st. That the plaintiff was and is under the age of twenty-one years, and therefore ought to have sued by guardian or next friend.

2d. That the defendant appeared by attorney, and not by guardian.

3d. That the words, " Mary Smith is with child by Stephen Jones," in the first count, are not actionable.

4th. That the words, " Ezekiel Smith's daughter is like to have a little one," in the second count are not actionable.

5th. That the referees were mistaken in point of law, for that the defendant spoke the words as they were told to him by another person, in friendly concern, without malice.

6th. The general errors.

The cause was very ably argued in April Term last, by *Leake* and *Ogden* for the rule, and *R. Stockton* and *Frelinghuysen* against it.

The counsel for the defendant contended, that in order to make words actionable in themselves, without the proof of special damage, they must contain a charge, which, if true, would subject the plaintiff to a criminal prosecution. 3 *Bl. Com.* 123, 124; 6 *Bac. Abr.* 205–6; and that when words were not in themselves actionable, they cannot be made so by [18] an innuendo. (*a*) If this principle be correct, the whole of the plaintiff's case falls to the ground; for she is not charged with any offence for which she can be subjected to a criminal prosecution. The crime of fornication, which is the utmost that is alleged against her, is not an indictable offence, either by the common law, or by the statute that seems to be referred to in the declaration. Under the act of December 12th, 1794, (*Allinson's Laws of N. J.* 4,) Section 3, fornication merely as such, is not indictable. Nor will even actual pregnancy resulting from the act make any difference. Before the parties become subject to the penalties of the act, there must be a bastard born; the whole section, if examined, requires this construction to be given it: unless the immoral act be followed by spurious issue, the criminal act is not cognizable by the law.

The words alleged in this case to have been spoken by defendant, are, consequently, not actionable, as they do not impute to plaintiff any crime or act punishable by the municipal law; she could not be punished for being with child, nor for the fornication, and by her death or marriage before delivery, she would wholly escape all liability to the penalties of this statute. The words, therefore, attribute to her nothing more than an act of moral turpitude, namely, fornication and mere pregnancy, neither of which exposed her, at the time they were spoken, to any human punishment. *Salter* v. *Browne, Cro. Car.* 436; *Byron* v. *Elmes,* 2 *Salk.* 693, *p.* 2; *Anonymous, Ibid.* 694, *p.* 4; *Graves* v. *Blanchat, Ibid.* 697,

(*a*) See *Holt* v. *Scholefield,* 6 *T. R.* 691; *Brooker* v. *Coffin,* 5 *Johns.* 188; *Schaffer* v. *Kintzer,* 1 *Bin.* 537.

*p.* 7 ; 1 *Morgan's Vade Mecum* 141–2 ; 6 *Bac. Abr.* 210. (*a*) These cases and authorities fully establish the doctrine here contended for, and lay down the law that for words imputing merely moral turpitude, no action will lie ; and if the words be not in themselves actionable, they cannot be made so by the malice of the speaker ; the finding of the arbitrators that the words were false and malicious, is of no importance, and cannot increase the responsibility of the defendant.   3 *Wils.* 188, per Lord C. J. De Grey.

[19] The arbitrators here have gone upon the supposition that the action was well laid, and in this have clearly mistaken the law.   They have awarded damages to a plaintiff who had no legal cause of action, and, in doing so, have subjected their award to be set aside.   1 *Bac. Abr.* 139 ; *Comeforth* v. *Geer*, 2 *Vern.* 705. (*b*)

For the plaintiff.—On the very principles laid down by the opposite counsel, this action is sustainable.   The cases and authorities cited do not reach the full length of the defendant's case : it is not required by them that the liability to a criminal prosecution should be immediate : it is sufficient that the plaintiff would be endangered.   If the charge be of such a description as to subject the plaintiff to any jeopardy of a future prosecution, it comes within the language and meaning of the law.   If a single woman be said to be with child, and *like* for a *little one*, innuendo a *bastard*, she must be endangered at law, and such language, if true, would certainly have a tendency to bring her to punishment. Nor is this such a case as that the court will be anxious to restrict the expressions of the law within narrower limits than they are compelled to by a sense of equity and justice. Redress for malicious defamation should be extended with

(*a*) See also *Buys and wife* v. *Gillespie*, 2 *Johns.* 115, and *Browne* v. *Lamberton*, 2 *Bin.* 34, in which latter case an action was maintained for charging a married woman with adultery.

(*b*) See *Bac. Abr.* 139, ( *Wilson's Edit.*,) for a digest and collection of the modern cases on this point.

the utmost liberality, and not frittered away by unnecessary refinements.

But the crime of fornication *only* is a punishable offence under the act of assembly. The act in question, as appears by its title, was intended to prevent and punish *immorality*. The *fornication*, or illicit cohabitation, is the crime to be punished and prevented; and all the expressions to be found in the statute relative to the "reputed father," "the maintenance of such bastard," &c., which have been so eagerly laid hold of to favor the construction of the defendant, are to be referred to another and distinct object, equally within the view of the legislature, viz., the maintenance of such children as might spring from these unlawful connections. The construction put upon this section of the statute is indeed singular, and equally at variance with the intent of the legislature, and the [20] words and policy of the law. It indeed savors of absurdity, to suppose that the criminality of the offence of fornication should, in any degree, depend upon the event of *issue;* the legislature say no such thing, but have declared, in express terms, " that any person convicted of *fornication* shall pay," &c. The having of issue is a consequence of the crime, but perfectly guiltless in itself, and the contrary construction is a wresting of the words and meaning of the act, to the purpose of sheltering one of the most dangerous vices to society, instead of giving to them their obvious and only salutary effect.

Certainly, however, the charging plaintiff as being with child of a bastard, exposes her to certain or probable damage, and comes clearly within the rule laid down in 3 *Wils.* 187. The cases cited from the English books with regard to the charge of bastardy, however analogous in appearance, do not actually apply, because their statutes only relate to the security of the parish, not at all to the criminal act, which is considered as altogether a *spiritual* matter, and is subjected to the cognizance of another tribunal. Our act of assembly, however, provides for both cases: it prescribes a punishment for the *offence,* and, in that respect, provides a

substitute for the *spiritual court,* and it follows the English statutes in taking care of the township. · We have no *spiritual court* with us, and, therefore, unless the interpretation for which we contend be given to the act, the crime of fornication will be committed here with impunity.

KINSEY, C. J., delivered, this term, the opinion of the court. After having stated the case at length, six reasons have been assigned for setting aside the award of the arbitrators, of which all except the third and fourth appear to have been abandoned by the counsel on the argument. Those which have been maintained, allege that the words laid in the declaration to have been spoken by the defendant, are really not actionable.

When the argument was had in the Supreme Court at the last term, it was not from any doubts as to this particular case that induced the court to postpone their decision, but as an important question arose upon the construction of the act [21] of December, 1794, whether simple fornication is an indictable offence, upon which different ideas have been entertained we thought it advisable to defer delivering judgment, in order that a solemn and deliberate opinion might be given upon that part of the argument, that the construction of it might be fully settled.

With respect to the present case, the *declaration* must now be taken to be true in all its parts; from whence it results that the words therein mentioned were spoken of the plaintiff by the defendant *falsely* and *maliciously.*

The point principally insisted on by the defendant's counsel, and upon which we took time to deliberate, was, that the report finds the defendant guilty of the allegations in the declaration, and that the words set forth in the first and second counts are not actionable. The objection is, they do not charge that plaintiff was delivered of a child, nor that the child was chargeable or likely to become chargeable to the township; and that if the words as laid in the declaration

are not actionable, the referees have been mistaken in point of law, and the report should be set aside.

A number of authorities have been cited to establish the first point, namely, that a charge of fornication is not actionable. It certainly appears, that in England, by the common law, no such action could be sustained, unless loss of marriage, or other special damage be laid and proved. The act of assembly has also been cited to prove that simple fornication, not followed by the birth of spurious offspring, is not punishable by any of its provisions. This interpretation of the act being denied by the counsel for the plaintiff, it becomes necessary for this court to declare its opinion, not only as it relates to this case, but as a solemn settlement of the question for the future.

The strong objection urged to the argument for the defendant is, that it is absurd to suppose the consequence attendant upon this crime to be indictable, and not the crime itself; and that this consequence depends not upon the will of the parties concerned, neither can it in reason, nor ought it in law, to constitute the offence. It was also contended, that from the preamble and title of the act, it appears, evidently, to be leveled at the immorality of the deed, which is in no degree af-[22]-fected by the subsequent birth of a bastard child. These objections are weighty and entitled to much consideration, yet I am fully satisfied from the whole tenor of the section, which is very inaccurately worded, that no fornication, unless that consequence does follow, is indictable under this act, and that such was the intention with which it was made, because—

1st. It is a penal act, and by the rules of construction cannot be extended to cases which do not come within its express words.

2d. The whole section must be taken together, as containing a description of the crime intended to be provided against.

3d. The word "such," repeated three times in this section, and always referring to the crime of fornication first

mentioned, evidently shows that the legislature intended to create no crime but that for which a positive punishment was prescribed.

4th. When the act proceeds to point out the punishment to be inflicted upon the man, it cannot be construed to extend to any other fornication than such as is followed by issue.

5th. In other words, the act describes the crime, as consisting in fornication attended with *issue*; the whole section is connected, and never was intended by the legislature to be considered separately.

6th. This construction is consonant not only to what the law is, but to what it ought to be. Because—

Where the *fornication* is productive, the crime may be proved in some measure by this circumstance, and by other facts which would not render the trial indecent. On the other hand, if, when unproductive, it still remains an indictable offence, by what proof can the fact be established? It would lead to inquiries too indecent to be brought before the public; it would subject behavior perhaps at worst merely imprudent, to critical investigation; and leave the actions and behavior of innocent persons exposed to idle conjecture, to unwarrantable construction, and impertinent curiosity; and the indecency of the inquiries would produce more harm than prosecutions would do good.

[23] Indecency is in some cases a legal reason for not sustaining a suit, (a) and surely this consideration is entitled to some weight in ascertaining the true construction of a statute. We ought to look forward to consequences where so much of the argument turns upon the policy of the law and the intentions of the legislature. So far, therefore, as this argument applies to the case before the court, we are of opinion with the defendant. We likewise admit, that for a defamation where the party is charged with an offence, in its nature merely *spiritual*, and cognizable only by ecclesiastical tribu-

(a) See the case of *Da Costa* v. *Jones, Cowp.* 729, which was probably alluded to.

nals, unless there is a *per quod* in the declaration, and special damage proved on the trial, no action lies in the courts of England.

But we think this action, nevertheless, sustainable, because—

1st. The woman is charged with the crime so far as fairly to intend her an object of punishment. In February, 1788, she is declared to be single and with child; in January, 1789, she is alive, and damages are awarded to her. We have a right to infer her, therefore, neither dead nor married, and such intendments may fairly and legally be made to support a righteous award. In trespass "*quare pisces suos cepit seperali piscaria*," after verdict, it was moved in arrest of judgment that the fish could not be called "*suos*," unless in a trunk or pond, and that a party had no more property in fish in a separate fishery than in a free fishery. The court said they would make any intendments to support the verdict, and that they would intend them in a pond. 1 *Ventris* 122.

The ancient and unreasonable rule, that words spoken are always to be understood "*in mitiori sensu*," has been long since properly exploded. *Beaver* v. *Hides*, 2 *Wils.* 300. Then the charge implies something more than simple fornication. We are at this period entitled to intend that it was meant to be asserted so far productive as to subject plaintiff to the consequences, if true, and with these intendments the action unquestionably will lie.

[24] 2d. Admitting this to be otherwise, yet an action will lie for *spiritual* defamation in New Jersey, because we have no ecclesiastical courts to punish the offence. The common law of England is indeed stable in its principles, but so flexible, as in its application readily to meet every new case that may arise, and to provide a redress for every injury that may be inflicted. The reason of the English cases is inapplicable here, and the decisions themselves should not, therefore, be regarded with the same technical precision, and applied with the same unbending exactness. Legacies are equally matters of spiritual cognizance, and actions for them are not sustain-

able in the courts of common law; (a) still, it appears, that during the usurpation of Cromwell, when the ecclesiastical courts were abolished, that actions for legacies were held to lie in the common law courts (b) in order to prevent a failure of justice, and that when the former were re-established at the Restoration, these causes again returned to their original tribunal. This we conceive to be a decided answer to this part of the defendant's case.

Again, putting all this out of the question, we are clearly of opinion that it is not competent for a party who submits to a reference, and agrees that judgment shall be entered and execution issue, to come forward at this stage and take exception to the declaration. The defendant's counsel were called upon to show a case where, after an award made upon a reference by consent, the court ever looked into the declaration to see if the action was sustainable. The opinion of Lord Chancellor Hardwicke, in the case of *Medcalf* v. *Ives*, 1 *Atkyns* 63, seems decidedly the other way. No such precedent has been, or we believe can be found, and this court, under the circumstances of this case, feel no inclination to [25] make one. (c) The consent of parties that judgment shall be entered, is in the nature of a release of errors, and the plaintiff here is acting manifestly contrary to his agreement of record; the court will not listen to such an allegation.

It is somewhat remarkable, also, that on this motion to set aside the award of referees of the parties' own choosing, none

(a) *Vide* 4 *Bac. Abr.* 446, for the law on this point.

(b) 1 *Sid.*, 45. The C. J. might have mentioned that with regard to fornication and adultery the law was the same, and that these crimes were, during that period, made cognizable by the civil magistrates. *Hardres* 107.

(c) This principle has been recognized to its full extent in the case of *Forseth* v. *Shaw*, 10 *Mass. Rep.* 253, where it was held by the court, that the submission of an action by a rule of the court to referees, mutually chosen by the parties, operates as a waiver of all exceptions to the forms of process, or may be considered as a release of errors, or an estoppel to the assignment of errors in the proceedings, anterior to such submission.

of the reasons go to the face of the award, (1 *Vent.* 243,) or to misbehavior in the arbitrators. (1 *Salk.* 73, *pl.* 11.) The objections go altogether to the declaration, and ought to have been made on demurrer. The defendant, in fact, has argued in arrest of judgment on a motion to set aside an award ; this is irregular, and the court would have been justified in refusing to hear an argument in this manner.

Upon the whole, calumny in general is of a nature so odious and detestable, and in the present instance so likely in its consequences to prove injurious, not only to the plaintiff personally, but to strike at the very peace of society, that the court have much pleasure in declaring the action maintainable ; and further, that for charging an offence for which the laws of England provide a spiritual punishment only, an action will lie here. I confess I felt upon this argument no small uneasiness to hear it so strenuously contended that, for so atrocious an injury, the laws of New Jersey provided no redress, because we were without a court which the genius of the country has not, nor ever will admit among us.

Rule discharged and award confirmed.

CITED *in Hazen* v. *Addis' Ad.,* 2 *Gr.* 334.