75 N.J. 200 (1977)
381 A.2d 333
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
CHARLES SAUNDERS, DEFENDANT-APPELLANT.
The Supreme Court of New Jersey.
Argued April 26, 1977.
Decided December 13, 1977.
*202 Mr. Alan Silber, Designated Counsel, argued the cause for appellant (Mr. Stanley C. Van Ness, Public Defender, attorney; Mr. Silber, of counsel and on the brief).
*203 Mr. Roy B. Greenman, Assistant Prosecutor, argued the cause for respondent (Mr. Joseph P. Lordi, Essex County Prosecutor, attorney).
The opinion of the Court was delivered by PASHMAN, J.
Defendant Charles Saunders was indicted along with Bernard Busby on charges of rape, assault with intent to rape and armed robbery. At trial both admitted to having had sexual intercourse with the two complainants, but insisted that the women had participated willingly in exchange for a promise that they would receive "reefers" (marijuana cigarettes) in return. The trial judge, on his own initiative, charged the jury that the defendants could be convicted of the "lesser included offense" of fornication (N.J.S.A. 2A:110-1) if they were found not guilty on the other counts. The jury acquitted the defendants of the charges in the indictment and convicted them of fornication.
Defendant made a timely motion for acquittal based on the alleged unconstitutionality of N.J.S.A. 2A:110-1. The trial court permitted the presentation of expert testimony and documentary evidence in support of defendant's contention that the statute was selectively enforced. Following hearings in which evidence relating to contemporary sexual habits and psychiatric views of sexual activity was introduced, the court issued an opinion upholding the constitutionality of the statute. 130 N.J. Super. 234 (Law Div. 1974). The Appellate Division affirmed, 142 N.J. Super. 287 (1976), and we granted defendant's petition for certification. 71 N.J. 502 (1976).

I
The incident precipitating this criminal prosecution occurred in Newark during the early morning hours of July 23, 1973. According to the two complainants, the defendant, Busby and a third man forcibly seized them on the street *204 as they were walking home from a bar where they had spent the evening. A brief struggle ensued culminating with the women being forced into a car and being driven to a deserted parking lot where the complainants allege they were forced to engage in sexual intercourse with the men. The women did not try to escape, allegedly because defendant and Busby were armed.
After each of the three men had engaged in sexual intercourse with both women, one of the women revealed that she was pregnant. She said that the men then became scared and quickly ejected the two women from the car, leaving them in the parking lot. The women subsequently reported the incident to a police officer who took them to the hospital. Only one woman was examined, and her medical report contained no reference to trauma in the genital area.
On cross-examination, both women admitted that they had been arrested for prostitution in the past and that they were currently under indictment for unspecified crimes. One woman denied that she had actually been engaging in prostitution when she was arrested. The other conceded that she had solicited money from men on several occasions, but denied that she had demanded any payment from the defendants or given her consent to the acts of sexual intercourse.
Both defendant and Busby testified in their own behalf. Both insisted they were driving home from New York City, where they had been visiting friends, when the two women attracted their attention by calling out to their passing vehicle. They circled the block and returned to pick up the women. Upon getting into the car, the women asked if they had any "reefers." The men decided to lie, saying that they did. Encouraged by this information, one of the women directed them to the parking lot where, after some more discussion about the reefers, she volunteered to have sexual relations with the men. Her companion also agreed, and the men proceeded to have sexual relations with each woman. *205 Both defendants flatly denied having any weapons or using any force.
According to the defendants, the women renewed their requests for some reefers, and the men finally admitted that they had been lying and had none. Enraged, the women indignantly demanded $10 for each act of sexual intercourse. The men refused to pay and the argument became more heated. It ended abruptly when the men pushed the two women out of the car and drove off.
Following this testimony, the judge informed counsel that he was considering the possibility of charging the jury with respect to the crime of fornication as a lesser included offense of rape. Defense counsel made an objection on the record, pointing out that the statute was in "disrepute" and rarely applied. The prosecutor stated that he would neither request nor oppose such a charge. He did suggest, however, that such a charge might be required by the defendant's admissions of sexual relations with the women.
The trial judge did not reveal his decision to so charge until completion of summations by both sides. Defendant's attorney objected again, and the judge replied:
Here is a situation in which there appears to be, and it is up to the jury to decide, an open admission in court of fornication, and I don't think the Court can ignore it since it is in the statute.
In charging the jury, the judge defined that crime of fornication as "an act of illicit sexual intercourse by a man, married or single, with an unmarried woman." He placed the burden on the State to prove that the act occurred, but he made no reference to proof of the marital status of the complainants.
Defense counsel once again objected to the fornication charge. He disputed the court's conclusion that fornication was truly a lesser included offense of rape, since one of its elements required proof that the woman be unmarried.[1] The *206 trial judge responded that his "recollection" was that both women had testified that they were not married. Defendant's counsel disagreed, although he was not certain. Counsel for Busby also objected on the ground that fornication was not a lesser included offense of rape.
The jury deliberated for about 20 minutes before seeking further advice from the court concerning the relationship between fornication and the other crimes.[2] The court suggested that the jury consider the charges in descending order of gravity, starting with rape and considering fornication only if it found the defendants not guilty of the more serious offenses. At the urging of defense counsel, the judge stated that a verdict of guilty on the fornication charge would necessarily include a finding of consent by the women, precluding a conviction for rape or assault. The prosecutor made no objection to this additional clarification. Shortly thereafter, the jury returned its verdict of guilty on the two fornication counts and not guilty on all other counts.
Defendant was fined $50 and his co-defendant, who had spent seven months in jail awaiting trial, was sentenced to "time spent."
Despite undisputed evidence of widespread nonenforcement of N.J.S.A. 2A:110-1, the trial judge found an insufficient showing of selective and purposeful discrimination based on an arbitrary or invidious classification.[3] He stated that *207 "the very nature of the crime makes enforcement difficult" and held further that defendant's conviction did not deny him equal protection or due process. 130 N.J. Super. at 241-43. Although agreeing that Eisenstadt v. Baird, 405 U.S. 438, 92 S.Ct. 1029, 31 L.Ed.2d 349 (1972) had expanded the right of privacy to include unmarried individuals, the trial judge did not think that the decision had undermined the reasoning of this Court in State v. Lutz, 57 N.J. 314 (1971) and State v. Clark, 58 N.J. 72 (1971) upholding the constitutionality of N.J.S.A. 2A:110-1. He concluded that the State's interests in preventing venereal disease and illegitimacy were sufficiently "compelling" to justify prohibiting sexual relations by unmarried persons. Id., 130 N.J. Super. at 243-44. These interests, he felt, established a valid secular purpose which overcame any claim that the law was designed to uphold a particular religious conception of morality. Id. at 244.
The Appellate Division affirmed the decision below for substantially the same reasons, adding a reference to the United States Supreme Court's summary affirmance in Doe v. Commonwealth's Attorney for City of Richmond, 425 U.S. 901, 96 S.Ct. 1489, 47 L.Ed.2d 751, reh. den. 425 U.S. 985, 96 S.Ct. 2192, 48 L.Ed.2d 810 (1976), aff'g 403 F. Supp. 1199 (E.D. Va. 1976).

*208 II

STANDING
The State asserts that this Court should refuse to consider defendant's constitutional claims based on the selective enforcement of this statute and its infringement on the right of privacy because he has no standing to press these arguments. This contention, which was raised for the first time on appeal, rests on the general principle that a litigant as to whom application of a statute would be constitutional lacks standing to attack the statute by asserting the constitutional rights of others. United States v. Raines, 362 U.S. 17, 21, 80 S.Ct. 519, 522, 4 L.Ed.2d 524, 529 (1960); In re Quinlan, 70 N.J. 10, 34 (1976), cert. den. sub nom. Garger v. New Jersey, 429 U.S. 922, 97 S.Ct. 319, 50 L.Ed.2d 289 (1976); State v. Norflett, 67 N.J. 268, 276 and n. 6 (1975); State v. Young, 57 N.J. 240, 252-254 (1970); State v. Monteleone, 36 N.J. 93, 100 (1961). The State urges also that the selective enforcement claim has no relevance to defendant's conviction because the trial court, rather than the prosecutor, placed the issue of fornication before the jury. Similarly, the State suggests that any privacy interests defendant may have are inapplicable to conduct which involved several other persons and occurred in a public place.
Unlike the United States Constitution, our State Constitution contains no provision limiting the judicial power to cases or controversies. However, this Court has recognized that rules of standing are necessary if the courts are to properly respect the legislature's prerogatives with regard to its law-making functions. In re Quinlan, supra, 70 N.J. at 34-35; Crescent Park Tenants Ass'n v. Realty Eq. Corp. of N.Y., 58 N.J. 98 (1971); Walker v. Stanhope, 23 N.J. 657, 660 (1957). The rule which limits a criminal defendant to constitutional claims related to his own conduct rests on the principle that legislative acts are presumptively valid and will not be overturned on the basis of *209 hypothetical cases not actually before the court. State v. Young, supra, 57 N.J. at 253.
Defendant asserts that the instant statute, N.J.S.A. 2A:110-1, is unconstitutional on its face since it generally seeks to outlaw conduct which the State has no power to prohibit. It is important to distinguish this argument from one where a contention is made that a statute may be "invalid in its application in special circumstances or fringe areas." State v. Monteleone, supra, 36 N.J. at 99; State v. Young, supra, 57 N.J. at 252-53. Cases involving a claim that a statute is unconstitutional simply because some protected activity might conceivably be within its reach are too hypothetical to warrant review. Cf. United States v. Raines, supra, 362 U.S. at 21-22, 80 S.Ct. at 522-523, 4 L.Ed.2d at 529.
Here the situation is quite the opposite. The elements which render the defendant's conduct unprotected have little to do with the underlying purposes of the law. N.J.S.A. 2A:110-1 seeks to prohibit all sexual relations between men and unmarried women,[4] regardless of the circumstances under which such acts occur. Thus, it is the normal application of the statute which the defendant seeks to challenge, not the "fringe" situations ordinarily involved in overbreadth attacks. We think it would be inappropriate to refuse to review the constitutionality of N.J.S.A. 2A:110-1 on the fortuitous ground that the defendant's act may have constituted a violation of other criminal statutes such as public or private lewdness. We therefore conclude that the salutary purposes of the usual rules of standing *210 should not operate in these circumstances to prevent defendant from challenging N.J.S.A. 2A:110-1 as unconstitutional on its face.

III

RIGHT OF PRIVACY
The right of privacy, upon which defendant bases his attack, is not explicitly mentioned in either the New Jersey or United States Constitutions. However, both documents have been construed to include such a right. On the federal level, the right was first recognized as being of constitutional stature by a majority of the Court in Griswold v. Connecticut, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965). There Mr. Justice Douglas, writing for the majority, explained that a "zone of privacy" was created not by one amendment standing alone, but by several fundamental constitutional guarantees:
* * * Various guarantees create zones of privacy. The right of association contained in the penumbra of the First Amendment is one, as we have seen. The Third Amendment in its prohibition against the quartering of soldiers `in any house' in time of peace without the consent of the owner is another facet of that privacy. The Fourth Amendment explicitly affirms the `right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures.' The Fifth Amendment in its Self-Incrimination Clause enables its citizen to create a zone of privacy which government may not force him to surrender to his detriment. The Ninth Amendment provides: `The enumeration in the Constitution of certain rights, shall not be construed to deny or disparage others retained by the people.'
[381 U.S. at 484, 85 S.Ct. at 1681, 14 L.Ed.2d at 514-515]
Subsequent Supreme Court decisions have firmly established the constitutional nature of the right of privacy. In Roe v. Wade, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973), the Court found that the right of privacy encompassed a woman's decision whether or not to terminate a *211 pregnancy. 410 U.S. at 153, 93 S.Ct. at 726, 35 L.Ed.2d at 177. More recently the right has been recognized in the Court's decisions in Carey v. Population Services International, 431 U.S. 678, 97 S.Ct. 2010, 52 L.Ed.2d 675 (1977); Whalen v. Roe, 429 U.S. 589, 97 S.Ct. 869, 51 L.Ed.2d 64 (1977); and Paul v. Davis, 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed. 2d 405, 419 (1976), reh. den. 425 U.S. 985, 96 S.Ct. 2194, 48 L.Ed.2d 811 (1976). In the Wade case, the Court observed that the right was hardly a "new" one, since as far back as 1891 the Supreme Court had recognized in Union Pacific R. Co. v. Botsford, 141 U.S. 250, 11 S.Ct. 1000, 35 L.Ed. 734 (1891), that "a right of personal privacy, or a guarantee of certain areas or zones of privacy, does exist under the Constitution." 410 U.S. at 152, 93 S.Ct. at 726, 35 L.Ed. 2d at 176.
However, the precise scope of the interests protected by the right of privacy are not easily defined. As the Court noted in Carey v. Population Services International, supra, the interests which have been held to fall within the protections of the right have been "personal" ones; they have included those "relating to marriage, Loving v. Virginia, 388 U.S. 1, 12, 87 S.Ct. 1817, 18 L.Ed.2d 1010 (1967); procreation, Skinner v. Oklahoma, 316 U.S. 535, 541-42, 62 S.Ct. 1110, 86 L.Ed. 1655 (1942); contraception, Eisenstadt v. Baird, 405 U.S. at 453-53, 92 S.Ct. 1029, id. at 460, 463-65, 92 S.Ct. 1029 (White, J., concurring in result); family relationships, Prince v. Massachusetts, 321 U.S. 158, 166, 64 S.Ct. 438, 88 L.Ed. 645 (1944); and child rearing and education, Pierce v. Society of Sisters, 268 U.S. 510, 535, 45 S.Ct. 571, 69 L.Ed. 1070 (1925); Meyer v. Nebraska, 262 U.S. 390, 399, 43 S.Ct. 625, 67 L.Ed. 1042 (1923)"; Carey, supra, 431 U.S. at 685, 97 S.Ct. at 2016, 52 L.Ed.2d at 684, quoting Roe v. Wade, supra, 410 U.S. at 152-53, 53 S.Ct. 705.
Although the Court in Carey observed that the "decision whether or not to beget or bear a child is at the very heart of this cluster of constitutionally protected choices," *212 (431 U.S. at 685, 97 S.Ct. at 2016, 52 L.Ed.2d at 684-85), we believe that the right of privacy is not confined to the private situations involved in each of these decisions. Indeed, the Court's references in Roe v. Wade to cases having nothing to do with such decisions should effectively dispel any such notion.[5] While Carey certainly emphasizes the importance of a person's choice regarding whether or not to have children, it indicates that the constitutional basis for the protection of such decisions is their relationship to individual autonomy. Mr. Justice Brennan observed that such personal choices concern "the most intimate of human activities and relationships," adding that "decisions whether to accomplish or to prevent conception are among the most private and sensitive." 431 U.S. at 685, 97 S.Ct. at 2017, 52 L.Ed.2d at 685. [Emphasis added.]
This view of the right of privacy is consistent with the approach taken by this Court in our recent decision in In re Quinlan, supra. There we held, as a matter of State constitutional law, that this important right was broad enough to encompass the freedom to make a personal choice as to the continuance of artificial life-support mechanisms. *213 Though Chief Justice Hughes noted for the Court that the right of privacy had theretofore been primarily associated with decisions involving contraception and family life, he also found that its underlying concern was with the protection of personal decisions, and that it might be included within "the class of what have been called rights of `personality.'" 70 N.J. 38, n. 7. Our Quinlan decision could not have been predicated on privacy grounds if the class of cognizable privacy interests was limited to personal decisions concerning procreative matters.
Any discussion of the right of privacy must focus on the ultimate interest which protection the Constitution seeks to ensure  the freedom of personal development. Whether one defines that concept as a "right to `intimacy' and a freedom to do intimate things," or "a right to the `integrity' of one's personality,'" see Henkin, "Privacy and Autonomy," 74 Colum. L. Rev. 1410, 1419 (1974), the crux of the matter is that governmental regulation of private personal behavior under the police power is sharply limited. As Mr. Justice Brandeis stated so eloquently in his dissent in Olmstead v. United States, 277 U.S. 438, 48 S.Ct. 564, 72 L.Ed. 944 (1928):
The makers of our Constitution undertook to secure conditions favorable to the pursuit of happiness. They recognized the significance of man's spiritual nature, of his feelings and of his intellect. They knew that only a part of the pain, pleasure and satisfactions of life are found in material things. They sought to protect Americans in their beliefs, their thoughts, their emotions and their sensations. They conferred, as against the government, the right to be let alone  the most valued by civilized men.
[277 U.S. at 478, 48 S.Ct. at 572, 72 L.Ed. at 956.]
See also Wade, supra, 410 U.S. at 211, 93 S.Ct. at 757, 35 L.Ed.2d at 187 (Douglas, J., concurring).
We conclude that the conduct statutorily defined as fornication involves, by its very nature, a fundamental personal choice. Thus, the statute infringes upon the right of privacy. Although persons may differ as to the propriety *214 and morality of such conduct and while we certainly do not condone its particular manifestations in this case, such a decision is necessarily encompassed in the concept of personal autonomy which our Constitution seeks to safeguard.
We recognize that the conduct prohibited by this statute has never been explicitly treated by the Supreme Court as falling within the right of privacy. In fact, we note that this question has been specifically reserved by the Court. See Carey, supra, 431 U.S. at 688, 97 S.Ct. at 2018, 52 L.Ed.2d at 687, n. 5. But see Paris Adult Theatre I v. Slaton, 413 U.S. 49, 68 and n. 15, 93 S.Ct. 2628, 2641, 37 L.Ed.2d 446, 463 (1973). Nevertheless, our decision today is consistent with the tenor and thrust of the Court's more recent decisions. As we stated earlier, the Court in Carey and Wade underscored the inherently private nature of a person's decision to bear or beget children. It would be rather anomalous if such a decision could be constitutionally protected while the more fundamental decision as to whether to engage in the conduct which is a necessary prerequisite to child-bearing could be constitutionally prohibited. Surely, such a choice involves considerations which are at least as intimate and personal as those which are involved in choosing whether to use contraceptives. We therefore join with other courts which have held that such sexual activities between adults are protected by the right of privacy.[6]See State v. Pilcher, 242 N.W.2d 348 (Sup. Ct. Iowa 1976).
*215 In limiting the reach of the privacy right in our recent Lutz and Clark decisions, we relied upon concurring opinions of Mr. Justice Goldberg and Mr. Justice White in the Supreme Court's holding in Griswold which were keyed to the intimacy of the marital relationship. One year after our decisions in Lutz and Clark, the Court decided Eisenstadt v. Baird, supra, which held for the first time that the right of privacy afforded the marital relationship extended to the individual as well. The Court declared:
[T]he marital couple is not an independent entity with a mind and a heart of its own, but an association of two individuals each with a separate individual and emotional makeup. If the right of privacy means anything, it is the right of the individual, married or single, to be free from unwarranted governmental intrusion into matters so fundamentally affecting a person as the decision whether to bear or beget a child. 405 U.S. at 453, 92 S.Ct. at 1038, 31 L.Ed.2d at 362.
Eisenstadt proved to be a stepping stone to the far more expansive concept of individual autonomy which the United States Supreme Court established in Roe v. Wade, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973). Wade and its progency have defined the "liberty" protected by the Fourteenth Amendment as safeguarding an individual's freedom to decide certain matters without unwarranted governmental interference or compulsion, regardless of marital status or family relationships. See, e.g., Carey v. Population Services International, supra; Planned Parenthood of Central Missouri v. Danforth, 428 U.S. 52, 96 S.Ct. 2831, 49 L.Ed.2d 788 (1976); cf. Whalen v. Roe, supra. Our conclusion that the view of privacy enunciated in Lutz and Clark is now untenable finds confirmation in the Court's recent pronouncement in Carey that
Griswold may no longer be read as holding that a State may not prohibit a married couple's use of contraceptives. Read in light of its progency, the teaching of Griswold is that the Constitution protects *216 individual decisions in matters of childbearing from unjustified intrusion by the State.
[431 U.S. at 687, 97 S.Ct. at 2018, 52 L.Ed.2d at 686; emphasis supplied.]
In emphasizing the progression from Griswold to Carey, we have not overlooked the Court's summary affirmance in Doe v. Commonwealth's Attorney for City of Richmond, D.C., 403 F. Supp. 1199, 1200, aff'd 425 U.S. 901, 96 S.Ct. 1489, 47 L.Ed.2d 751, reh. den. 425 U.S. 985, 96 S.Ct. 2192, 48 L.Ed.2d 810 (1976), which upheld the constitutionality of Virginia's sodomy statute as applied to private sexual conduct between consenting male adults. We are not inclined to read this controversial decision too broadly. Though the lower court's decision is technically binding as a precedent, Hicks v. Miranda, 422 U.S. 332, 343-44, 95 S.Ct. 2281, 2288-2289, 45 L.Ed.2d 223, 236 (1975), it does not necessarily represent the reasoning of the Court. See Mandel v. Bradley, 432 U.S. 173, 97 S.Ct. 2238, 53 L.Ed.2d 199 (1977); Fusari v. Steinberg, 419 U.S. 379, 391-92, 95 S.Ct. 533, 42 L.Ed.2d 521, 530-31 (1975) (Burger, C.J., concurring). Furthermore, the significance of Doe v. Commonwealth's Attorney for City of Richmond, supra, is a matter of some dispute within the Court. Compare Carey, supra, 431 U.S. at 688, 694, 97 S.Ct. at 2018 and 2021, 52 L.Ed.2d at 687 n. 5 and 691 n. 17 with id., at 718, 97 S.Ct. at 2033, 52 L.Ed.2d at 705 n. 2 (Rehnquist, J., dissenting).
Finally, we note that our doubts as to the constitutionality of the fornication statute are also impelled by this Court's development of a constitutionally mandated "zone" of privacy protecting individuals from unwarranted governmental intrusion into matters of intimate personal and family concern. It is now settled that the right of privacy guaranteed under the Fourteenth Amendment has an analogue in our State Constitution, N.J. Const. (1947), Art. I, par. 1. In re Quinlan, supra, 70 N.J. at 40. Although the scope of this State right is not necessarily broader in all respects, *217 cf. Meerwarth v. Meerwarth, 71 N.J. 541 (1976), the lack of constraints imposed by considerations of federalism permits this Court to demand stronger and more persuasive showings of a public interest in allowing the State to prohibit sexual practices than would be required by the United States Supreme Court.[7]Cf. San Antonio School District v. Rodriguez, 411 U.S. 1, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973). See also Tp. of Montville v. Block 69, Lot 10, 74 N.J. 1, 18 (1977); State v. Johnson, 68 N.J. 349, 353 (1975); Burlington Cty. NAACP v. Tp. of Mt. Laurel, 67 N.J. 151 (1975), cert. den. and appeal dismissed, 423 U.S. 803, 96 S.Ct. 18, 46 L.Ed.2d 28 (1975).
Yet our inquiry cannot end here. Having found that the statute impinges upon the fundamental right of privacy, we must go on to consider whether that impingement can be justified by some compelling state interest. See Carey, 431 U.S. at 685, 97 S.Ct. at 2017, 52 L.Ed.2d at 685; Wade, 410 U.S. at 154, 93 S.Ct. at 727, 35 L.Ed.2d at 177-78; Meerwarth v. Meerwarth, supra, 71 N.J. at 544. In an attempt to justify the statute's infringement of protected rights, the State cites its interests in preventing venereal disease and an increase in the number of illegitimate children, and in protecting the marital relationship and public morals by preventing illicit sex.
Perhaps the strongest reason favoring the law is its supposed relationship to the furtherance of the State's salutary goal of preventing venereal disease. We do not question the *218 State's compelling interest in preventing the spread of such diseases. Nor do we dispute the power of the State to regulate activities which may adversely affect the public health. See, e.g., Barsky v. Bd. of Regents of N.Y., 347 U.S. 442, 449, 74 S.Ct. 650, 98 L.Ed. 829, 838 (1954). However, we do not believe that the instant enactment is properly designed with that end in mind. First, while we recognize that the statute would substantially eliminate venereal diseases if it could successfully deter people from engaging in the prohibited activity, we doubt its ability to achieve that result. The risk of contracting venereal disease is surely as great a deterrent to illicit sex as the maximum penalty under this act: a fine of $50 and/or imprisonment in jail for six months. As the Court found in Carey, absent highly coercive measures, it is extremely doubtful that people will be deterred from engaging in such natural activities. The Court there rejected the assertion that the threat of an unwanted pregnancy would deter persons from engaging in extramarital sexual activities. See Carey, supra, 431 U.S. at 694, 97 S.Ct. at 2021-2022, 52 L.Ed.2d at 691-92 (plurality opinion of Justices Brennan, Stewart, Marshall and Blackmun). We conclude that the same is true for the possibility of being prosecuted under the fornication statute.
Furthermore, if the State's interest in the instant statute is that it is helpful in preventing venereal disease, we conclude that it is counter-productive. To the extent that any successful program to combat venereal disease must depend upon affected persons coming forward for treatment, the present statute operates as a deterrent to such voluntary participation. The fear of being prosecuted for the "crime" of fornication can only deter people from seeking such necessary treatment.
We similarly fail to comprehend how the State's interest in preventing the propagation of illegitimate children will be measurably advanced by the instant law. If the unavailability of contraceptives is not likely to deter people from *219 engaging in illicit sexual activities, it follows that the fear of unwanted pregnancies will be equally ineffective. See Carey, supra.
The last two reasons offered by the State as compelling justifications for the enactment  that it protects the marital relationship and the public morals by preventing illicit sex  offer little additional support for the law. Whether or not abstention is likely to induce persons to marry, this statute can in no way be considered a permissible means of fostering what may otherwise be a socially beneficial institution. If we were to hold that the State could attempt to coerce people into marriage, we would undermine the very independent choice which lies at the core of the right of privacy. We do not doubt the beneficent qualities of marriage, both for individuals as well as for society as a whole. Yet, we can only reiterate that decisions such as whether to marry are of a highly personal nature; they neither lend themselves to official coercion or sanction, nor fall within the regulatory power of those who are elected to govern.
This is not to suggest that the State may not regulate, in an appropriate manner, activities which are designed to further public morality. Our conclusion today extends no further than to strike down a measure which has as its objective the regulation of private morality. To the extent that N.J.S.A. 2A:110-1 serves as an official sanction of certain conceptions of desirable lifestyles, social mores or individualized beliefs, it is not an appropriate exercise of the police power.[8]
*220 Fornication may be abhorrent to the morals and deeply held beliefs of many persons. But any appropriate "remedy" for such conduct cannot come from legislative fiat. Private personal acts between two consenting adults are not to be lightly meddled with by the State. The right of personal autonomy is fundamental to a free society. Persons who view fornication as opprobrious conduct may seek strenuously to dissuade people from engaging in it. However, they may not inhibit such conduct through the coercive power of the criminal law. As aptly stated by Sir Francis Bacon, "[t]he sum of behavior is to retain a man's own dignity without intruding on the liberty of others."[9] The fornication statute mocks the dignity of both offenders and enforcers. Surely police have more pressing duties than to search out adults who live a so-called "wayward" life. Surely the dignity of the law is undermined when an intimate personal activity between consenting adults can be dragged into court and "exposed." More importantly, the liberty which is the birthright of every individual suffers dearly when the State can so grossly intrude on personal autonomy.
The Appellate Division's affirmance of the judgment of conviction is reversed and a judgment of acquittal shall be entered.
SCHREIBER, J., concurring.
I concur in the result reached by the Court but for different reasons. The majority relies heavily on recent United States Supreme Court decisions involving the right of privacy for its conclusion that the State cannot interfere with the conduct proscribed by the New Jersey fornication statute. I believe they have misgauged the scope of those decisions. For the reasons developed below, I would rest the invalidity of this statute squarely on the ground that it conflicts with Article I, par. 1 of the New Jersey Constitution.
*221 I fully agree with the dissenting opinion that causes should usually be decided upon nonconstitutional grounds where possible. This is not an inexorable rule. See Board of Ed., Bor. of Union Beach v. New Jersey Educ. Ass'n, 53 N.J. 29, 44 (1968); Peters v. Hobby, 349 U.S. 331, 349, 75 S.Ct. 790, 799, 99 L.Ed. 1129, 1143 (1955) (Black, J., concurring). The conduct proscribed by the fornication statute is so widespread that we should face up to the constitutional issues now.
The defendant has advanced three constitutionally based arguments. First, he argues that the fornication statute, N.J.S.A. 2A:110-1, should not be applied to him because the uneven enforcement of that statute deprives him of the equal protection of the laws to which he is entitled under the Fourteenth Amendment to the federal Constitution. Second, he asserts that the fornication statute invades a federally constitutionally protected zone of privacy which the United States Supreme Court has found to exist in the First, Third, Fourth, Fifth, Ninth and Fourteenth Amendments. Third, he claims that the statute violates the right of privacy guaranteed by Article I, par. 1 of the New Jersey Constitution.

I
I agree with the State that the defendant has not established that he was deprived of the equal protection of the laws under the Fourteenth Amendment because of erratic enforcement of the statute. As the trial court stated, the defendant had the burden of showing not only that prosecutions for fornication were limited to a small proportion of those fornications which had occurred, but that the selection was based on some arbitrary or invidious classification. See Oyler v. Boles, 368 U.S. 448, 82 S.Ct. 501, 7 L.Ed.2d 446 (1962). This he failed to do.

*222 II

The United States Supreme Court in enunciating the perimeters of the right of privacy has conspicuously omitted any pronouncement to the effect that a fornication statute comparable to N.J.S.A. 2A:110-1 is proscribed by the federal Constitution. When we considered this question in 1971, referring to the concurring opinions of Mr. Justice Goldberg and Mr. Justice White in Griswold v. Connecticut, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965), and the dissenting opinion of Mr. Justice Harlan in Poe v. Ullman, 367 U.S. 497, 81 S.Ct. 1752, 6 L.Ed.2d 989 (1961), we concluded that there was no such federal restriction. State v. Lutz, 57 N.J. 314, 315 (1971); State v. Clark, 58 N.J. 72, 82-83 (1971). Mr. Justice Goldberg, who was joined in his concurrence by Chief Justice Warren and Mr. Justice Brennan, emphasized that the holding in Griswold "in no way interferes with a State's proper regulation of sexual promiscuity or misconduct" and stated that the constitutionality of Connecticut statutes prohibiting adultery and fornication "is beyond doubt." 381 U.S. at 498-499, 85 S.Ct. at 1689, 14 L.Ed.2d at 523. Although not embodied in an actual holding, this language virtually compelled the conclusion we reached on the federal question raised in Lutz and Clark. Subsequent Supreme Court decisions have not reflected any changes to warrant a reversal or modification of that opinion. For example, in Paris Adult Theatre I v. Slaton, 413 U.S. 49, 93 S.Ct. 2628, 37 L.Ed.2d 446 (1973), the Court suggested by implication that state fornication statutes are not violative of the federal Constitution. Id. at 68, n. 15, 93 S.Ct. at 2641, 37 L.Ed.2d at 463. The most recent Supreme Court pronouncement appears in Carey v. Population Services International, 431 U.S. 678, 97 S.Ct. 2010, 52 L.Ed.2d 675 (1977). There the Court invalidated a New York statute regulating the sale and distribution of contraceptives on the ground that the constitutionally protected right of privacy guarantees an individual's *223 liberty of using or not using contraception. Mr. Justice Brennan, writing for the Court,[1] concluded that "at the very heart of [the] cluster of constitutionally protected choices" recognized in previous Supreme Court privacy cases[2] is "the decision whether or not to beget or bear a child." Id. at 685, 97 S.Ct. at 2016, 52 L.Ed.2d at 684-685. The prohibitions under review in Carey clearly intruded upon the individual's freedom to make decisions in this area.
In footnotes to the majority opinion, Mr. Justice Brennan emphasized that the Court did not purport to reach any constitutional questions raised by state statutes regulating private consensual sexual behavior among adults. Id. at 688, n. 5, 694, n. 17, 97 S.Ct. at 2018, 2021, 52 L.Ed.2d at 687, 691. Mr. Justice White, in his concurrence, also stated that the result did not have the effect of "declaring unconstitutional any state law forbidding extramarital sexual relations." Id. at 702, 97 S.Ct. at 2025, 52 L.Ed.2d at 696. In light of these disclaimers, Carey cannot be said to signal a departure from the view that the federal right to privacy permits a state to punish fornication.
*224 Further, the Court's summary affirmance[3] of Doe v. Commonwealth's Attorney for City of Richmond, 403 F. Supp. 1199 (E.D. Va. 1975), aff'd 425 U.S. 901, 96 S.Ct. 1489, 47 L.Ed.2d 751, reh. den. 425 U.S. 985, 96 S.Ct. 2192, 48 L.Ed.2d 810 (1976) (three-judge district court decision holding the state of Virginia could constitutionally apply its sodomy statute to private sexual conduct between consenting male adults),[4] seems totally incompatible with the suggestion that the federal right of privacy protects "individual autonomy." 75 N.J. at 211-212. I can discern no rational basis for excepting from the realm of "individual autonomy" the private consensual conduct which, according to City of Richmond, may be constitutionally prohibited by the states. Without some articulated basis for such an exception, then, I can only conclude that the Court continues to view the federal right of privacy as encompassing the narrower range of activity associated with choices related to childrearing and child-bearing. See cases cited n. 2, supra. The fornication statute at issue here does not involve these choices. I cannot agree, then, that the right of privacy within the umbrella of the Fourteenth Amendment invalidates the statute.

III
The New Jersey Constitution recognizes certain natural and unalienable rights of its citizens:
All persons are by nature free and independent, and have certain natural and unalienable rights, among which are those of enjoying *225 and defending life and liberty * * * and of pursuing and obtaining safety and happiness. [N.J. Const. (1947), Art. I, par. 1]
We have hitherto recognized that this provision encompasses an individual right of privacy. In re Quinlan, 70 N.J. 10, 40, cert. den. sub nom. Garger v. New Jersey, 429 U.S. 922, 97 S.Ct. 319, 50 L.Ed.2d 289 (1976). Article I, par. 1 is almost a copy of the comparable provision in the 1844 Constitution. In a monograph prepared for the 1947 New Jersey Constitutional Convention, Dean Heckel stated that "among the rights included" in Article 1, par. 1 of the 1844 Constitution is a "right of privacy." Heckel, "The Bill of Rights," in II Constitutional Convention of 1947, 1336 at 1339. He relied upon McGovern v. Van Riper, 137 N.J. Eq. 24, 33 (Ch. 1945), in which the court wrote that the right of privacy "is one of the `natural and inalienable rights' recognized in article 1, section 1 of the constitution of this state." No language change made in Article I, par. 1 by the 1947 Constitutional Convention would affect this construction.
The rights of two adults to make personal decisions are inherent in their freedom of thought. Implementation of those decisions in pursuit of their concept of happiness manifests an exercise of human liberty. Whatever else may be said of happiness, it is best obtained in a climate of free decision where each individual has the choice of consenting or not to acts or events which may affect him. Different persons have differing spiritual and moral views and so long as their personal conduct does not affect others, individuals have freedom to think, decide and act as they see fit. This freedom is an aspect of their right of privacy. Private consensual sexual conduct represents an exercise of that right.
Unlike the United States Constitution, the New Jersey Constitution is not a grant of enumerated powers, but rather a limitation of the sovereign powers of the State vested in the Legislature. Behnke v. N.J. Highway Authority, 13 N.J. 14, 24 (1953). That legislative authority is circumscribed *226 by constitutional provisions, In re Hague, 123 N.J. Eq. 475 (E. & A. 1930), including those expressed in Article I, par. 1. Although the Legislature, in exercising its powers, may incidentally affect the natural and unalienable rights of individuals to liberty and the pursuit of happiness which have been recognized in Article I, the validity of any statute directly limiting those rights should be carefully scrutinized in light of its legislative purposes.
At common law fornication was not a crime. As explained by Blackstone:
In the year 1650, when the ruling power found it for their interest to put on the semblance of a very extraordinary strictness and purity of morals, not only incest and wilful adultery were made capital crimes; but also the repeated act of keeping a brothel, or committing fornication, were (upon a second conviction) made felony without benefit of clergy. But at the restoration, when men, from an abhorrence of the hypocrisy of the late times, fell into a contrary extreme of licentiousness, it was not thought proper to renew a law of such unfashionable rigour. And these offences have been ever since left to the feeble coercion of the spiritual court, according to the rules of the canon law * * *. [W. Blackstone, Commentaries, Book IV, Ch. IV, [*]64-65]
See State v. Brenner, 132 N.J.L. 607, 609 (E. & A. 1945). The New Jersey Assembly initially declared fornication as an offense in a statute enacted in 1704. Allinson's Laws of New Jersey 4, December 12, 1704, § 3. Legislative materials suggest that the statute was designed because of certain religious concepts. The preamble and title of the act indicate that it was passed to prevent immorality and moral turpitude. It was entitled "An Act for Suppressing Immorality" and its preamble refers to immorality having abounded too much "to the shame of Christianity, and the great Grief of all good and sober men * * *." In addition to fornication and adultery, the act prohibited drunkenness, cursing, swearing, and "breaking the Lord's day."
In 1796 a general crimes act which fixed a $14 penalty for fornication was enacted and Section 3 of the 1704 act was repealed. "An Act for the Punishment of Crimes," *227 Paterson's Laws 210, 264, § 74 (1800 ed.). In succeeding criminal statutes only the penalties for fornication were varied. In the criminal code of 1898 fornication was classified as a crime "Against Public Morals and the Institution of Marriage." See "An Act for the Punishment of Crimes (Revision of 1898)," L. 1898, c. 235, § 48. There is no indication that the Legislature's view of fornication expressed in 1704 and 1898 as an offense to public morality has been modified or that any object, other than enforcing a particular moral code, motivated its adoption of the fornication statute.[5]
The State rationalizes that the fornication statute is justifiable as a means of preventing the spread of venereal disease and the birth of illegitimate children. As the majority indicates, these grounds are not persuasive. More importantly, there is no evidence that this statute was intended as anything but an attempt to regulate private morality.
The Legislature cannot infringe on the rights of individuals who in private and without affecting others adopt and live by standards which differ from those of society. Even in the eighteenth century, it was recognized that a fornication statute could represent an unwarranted intrusion into that privacy. Smith v. Minor, 1 N.J.L. 19, 26 (Sup. Ct. 1790), construed the 1704 act to require proof of the birth of a child as an element of fornication to constitute a crime, as otherwise "it would subject behavior perhaps at worst merely imprudent, to critical investigation; and leave the actions and behavior of innocent persons exposed to idle conjecture, to unwarrantable construction, and impertinent curiosity * * *." It is only when the public interest would be substantially adversely affected by some exercise of the right of privacy or when the public interest would be otherwise *228 substantially promoted by legislation that the Legislature may infringe upon that right.
I agree with the majority that the judgment of the Appellate Division affirming the conviction of the defendant should be reversed and a judgment of acquittal should be entered.
CLIFFORD, J., dissenting.
Bluntly put, this case is a wretched vehicle for addressing the questions which counsel for the respective parties would have us answer. It seems somehow incongruous to use the soaring phrases of Mr. Justice Brandeis in Olmstead v. United States, 277 U.S. 438, 48 S.Ct. 564, 72 L.Ed. 944 (1928), as support for the proposition that the State of New Jersey is powerless to prohibit, as a violation of N.J.S.A. 2A:110-1, indiscriminate group fornicating by  or indeed, among  complete strangers exhibiting remarkable dexterity in the confined quarters of a parked automobile on a deserted lot in Newark.
Wretched or not, though, that is the way the matter comes to us. Were this a proper case for the resolution of the asserted constitutional issues and were I to confront them at this point, I would very likely agree substantially with Justice Schreiber's analysis and concur entirely in parts I and II of his opinion. I read the decisions of the United States Supreme Court just as he does. As an abstract proposition, certainly, I am inclined to ground any determination of the statute's invalidity on the State constitution, N.J. Const. Art. 1, § 1, and on the authority of In re Quinlan, 70 N.J. 10, 40, cert. den. sub nom., Garger v. New Jersey, 429 U.S. 922, 97 S.Ct. 319, 50 L.Ed.2d 289 (1976). I hold to the view (and as I read the other opinions, so do all the other members of this Court) that absent a compelling state interest the State may not regulate a person's private decisions which have merely incidental effects on others. In application that principle leads to the conclusion that if two people freely determine that they wish to have sexual relations *229 in a setting inoffensive to and only incidentally affecting others, the State is without authority to interfere through the criminal process with that decision, despite the fact that such decision may be in violation of conventional community standards of morality. And that includes the grubby little exercise in self-gratification involved here.
But I think we need not, and I would not, get to the constitutional issue, at least not at this point. Rather I would call for the submission of briefs and further argument of counsel on the question whether fornication is a lesser included offense with respect to rape. For several reasons this is the desirable course.
First, there is the sound, oft-expressed principle that constitutional questions should not be reached and resolved unless absolutely imperative in the disposition of the litigation. While the adjudicative process admits of few unyielding rules, this maxim comes as close as any to being an absolute. Burton v. United States, 196 U.S. 283, 295, 25 S.Ct. 243, 245, 49 L.Ed. 482, 485-86 (1905); United States v. Raines, 362 U.S. 17, 21, 80 S.Ct. 519, 522, 4 L.Ed.2d 524, 529 (1960); Communist Party, U.S.A. v. Catherwood, 367 U.S. 389, 392, 81 S.Ct. 1465, 1467, 6 L.Ed.2d 919, 922 (1961); Rosenberg v. Fleuti, 374 U.S. 449, 463, 83 S.Ct. 1804, 1812, 10 L.Ed.2d 1000, 1009 (1963); Alexander v. Louisiana, 405 U.S. 625, 633, 92 S.Ct. 1221, 1226, 31 L.Ed.2d 536, 544 (1972); Hagans v. Lavine, 415 U.S. 528, 547, 94 S.Ct. 1372, 1384, 39 L.Ed.2d 577, 594 (1974); Bowen v. United States, 422 U.S. 916, 920, 95 S.Ct. 2569, 2572, 45 L.Ed.2d 641, 647 (1975); State v. Fair Lawn Serv. Center, Inc., 20 N.J. 468, 470-71 (1956); State v. Salerno, 27 N.J. 289, 296 (1958); Ahto v. Weaver, 39 N.J. 418, 428 (1963); State v. Zucconi, 50 N.J. 361, 364 (1967); Donadio v. Cunningham, 58 N.J. 309, 325-26 (1971); Hildebrandt v. Bailey, 65 N.J. Super. 274, 285 (App. Div. 1961); Accident Index Bureau, Inc. v. Hughes, 83 N.J. Super. 293, 302 (App. Div. 1964), aff'd on other grounds, 46 N.J. 160 (1965); Hertz Washmobile Sys. v. South *230 Orange, 41 N.J. Super. 110, 122 (Law Div. 1956), aff'd on other grounds, 25 N.J. 207 (1957); Smith v. Livingston Twp., 106 N.J. Super. 444, 457-58 (Ch. 1969), aff'd o.b., 54 N.J. 525 (1969); Lordi v. U A New Jersey Theatres, Inc., 108 N.J. Super. 19, 33 (Ch. 1969); Tonsorial Inc. v. Union City, 115 N.J. Super. 33, 41 (Law Div. 1971); State v. Smith, 130 N.J. Super. 442, 446 (Law Div. 1974); Sabato v. Sabato, 135 N.J. Super. 158, 166 (Law Div. 1975). Inasmuch as there may be another, non-constitutional basis for decision, we should heed that admonition and defer addressing the constitutional question here.
Additionally, the interests of the parties will be amply served by a decision on the narrower "lesser included offense" ground. If fornication is not included in rape, then defendant goes free; certainly Mr. Saunders' interests are fully vindicated, it being neither apparent nor even likely that he has any burning curiosity about, or yearning for resolution of, the constitutional dimensions of the controversy in which he finds himself embroiled. If fornication is a lesser included offense of the crime of rape, then that issue (not heretofore directly presented or authoritatively determined in this State) will have been put to rest, thereby clarifying the law. We would then proceed in the instant case to the constitutional question.
Finally, while I find considerable merit in the proposition that fornication is not a lesser included offense of rape and therefore should not have been included in the trial judge's charge to the jury, the point should not be decided without affording counsel a full opportunity to be heard on that specific question. See Dresner v. Carrara, 69 N.J. 237, 243 (1976); cf. U.S. Trust Co. of N.Y. v. State, 69 N.J. 253, 257 (1976), rev'd on other grounds, 431 U.S. 1, 97 S.Ct. 1505, 52 L.Ed. 2d 92 (1977). In passing I would observe that while defendant preserved this point by exception to the trial court's charge on fornication as a lesser included offense of rape, for reasons not at all clear the issue *231 was not raised in the Appellate Division nor before this Court. Hence the call for briefs.
It is quite clear that a substantial issue is present as to whether fornication is a lesser included offense of rape. See State v. McPherson, 135 N.J. Super. 203 (App. Div. 1975) (fornication not a lesser included offense of rape); accord DeLaine v. State, 262 So.2d 655 (Sup. Ct. Fla. 1972) (fornication not a lesser included offense of rape). In some other jurisdictions to convict for fornication the State must show that the female participant is unmarried and that both parties consented to the act, neither of which requirements is a constituent element of a rape conviction. See 37 C.J.S. Fornication §§ 1, 2 (1943). In the instant case the record leaves doubt as to the marital status of one of the complaining witnesses. In addition, a jury's determination that the State has failed to prove beyond a reasonable doubt the complaining witnesses' lack of consent does not equate with an affirmative finding of consent. Further, defense counsel was unaware that the possibility of a fornication conviction was to be submitted to the jury until after summations had been completed; hence he had no opportunity to introduce evidence bearing on these issues or to argue them to the jury.
While the foregoing brief discussion is obviously not, nor is it intended to be, exhaustive, nevertheless it does demonstrate a respectable basis for rejecting the "lesser included offense" position adopted by the trial court over defendant's objection. I would think the point sufficiently worth pursuing as to require further briefs, putting the constitutional issue aside for now. I therefore dissent from the judgment of the Court.
Justice MOUNTAIN joins in this opinion.
SCHREIBER, J., concurring in the result.
For reversal  Chief Justice HUGHES and Justices SULLIVAN, PASHMAN, SCHREIBER and HANDLER  5.
For affirmance  Justices MOUNTAIN and CLIFFORD  2.
NOTES
[1] In view of our disposition of this appeal, we find it unnecessary to reach this issue but do observe that modern views define such an offense to be one which "is established by proof of the same or less than all the facts required to establish the commission of the offense charged." Model Penal Code, Proposed Official Draft (1962) § 1.07 (4) (a). [Emphasis added.] See also proposed New Jersey Penal Code (1971) (§ 2C:1-7(d)).
[2] The jury asked:

Having given us the meaning of fornication and then redirecting us that if found guilty or not guilty on one charge, we must then find them guilty or not guilty of the other charges, we are somewhat confused.
[3] The proceedings which followed the trial are summarized in the opinion of the trial court, 130 N.J. Super. at 237-40. The defendant's intention was to establish a factual record demonstrating discrimination in the enforcement of the statute which would support his constitutional attack. The absence of such a record was noted in State v. Clark, 58 N.J. 72, 76 (1971) and State v. Lutz, 57 N.J. 314, 316 (1971) where defendants convicted of fornication similarly argued that N.J.S.A. 2A:110-1 was invalid.

Since we do not reach this issue, it would serve no purpose to review the defendant's evidence. We do note, however, that the uncontradicted evidence established that enforcement of N.J.S.A. 2A:110-1 is extremely infrequent, and often nonexistent. We also note the testimony of an experienced matrimonial lawyer who stated that a sizable portion of his matrimonial cases involve instances of adultery which are never pursued in criminal proceedings. But cf. Mahne v. Mahne, 66 N.J. 53 (1974).
[4] Fornication is defined by the marital status of the woman. State v. Sharp, 75 N.J.L. 201 (Sup. Ct. 1907); Gaunt v. State, 50 N.J.L. 490 (Sup. Ct. 1888). The original statute required proof of issue in addition to proof of the sexual act. Smith v. Minor, 1 N.J.L. 19 (Sup. Ct. 1790). The law was subsequently amended to encompass all acts of sexual intercourse involving an unmarried woman, whether or not resulting in the birth of a child. State v. Sharp, supra, 75 N.J.L. at 203.
[5] In referring to the right of privacy there, the Court stated:

In varying contexts, the Court or individual Justices have, indeed, found at least the roots of that right in the First Amendment, Stanley v. Georgia, 394 U.S. 557, 564, 89 S.Ct. 1243, 22 L.Ed.2d 542 (1969); in the Fourth and Fifth Amendments, Terry v. Ohio, 392 U.S. 1, 8-9, 88 S.Ct. 1868, 20 L.Ed. 2d 889 (1968); Katz v. United States, 389 U.S. 347, 350, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967); Boyd v. United States, 116 U.S. 616, 6 S.Ct. 524, 29 L.Ed. 746 (1886), see Olmstead v. United States, 277 U.S. 438, 478, 48 S.Ct. 564, 72 L.Ed. 944, 66 A.L.R. 376 (1928) (Brandeis, J., dissenting); in the penumbras of the Bill of Rights, Griswold v. Connecticut, 381 U.S., at 484-85, 85 S.Ct. 1678, 14 L.Ed.2d 510, in the Ninth Amendment, id., at 399, 43 S.Ct. 625, 67 L.Ed. 1042, 29 A.L.R. 1446 (1923).
or in the concept of liberty guaranteed by the first section of the Fourteenth Amendment, see Meyer v. Nebraska, 262 U.S. 390, 399, 43 S.Ct. 625, 67 L.Ed. 1042, 29 A.L.R. 1446 (1923).
[410 U.S. at 152, 93 S.Ct. at 726, 35 L.Ed.2d at 176.]
[6] This case, of course, does not involve sexual activities between minors. We have not been called upon to consider whether the State might conclude that a child lacks "the full capacity for individual choice" in such matters, thereby justifying State regulation of his or her sexual mores. See Ginsberg v. New York, 390 U.S. 629, 649-50, 88 S.Ct. 1274, 20 L.Ed.2d 195 (1968) (Stewart, J., concurring in the result); Prince v. Massachusetts, 321 U.S. 158, 170, 64 S.Ct. 438, 88 L.Ed. 645 (1944); Carey, 431 U.S. at 705, 97 S.Ct. at 2026, 52 L.Ed.2d at 698 (Powell, J., concurring in part).
[7] It may also be observed that State v. Lair, 62 N.J. 388 (1973), may have been a poor case in which to discuss the problems of sexual relations between unmarried persons. In construing our sodomy statute, N.J.S.A. 2A:143-1, we were not faced with any factual basis for finding that consent had been given for the sexual acts performed there. Thus, there was no reason to apply the constitutional protection which we find today to unmarried persons. See 62 N.J. at 398-99 (Weintraub, C.J., concurring). See also State v. J.O., 69 N.J. 574 (1974), where we narrowly construed the private lewdness statute, N.J.S.A. 2A:115-1, to avoid any constitutional objection.
[8] Our decision today confirms the determination of the New Jersey Criminal Law Revision Commission that fornication should not constitute a criminal offense. See The New Jersey Penal Code, Volume II: Commentary, Final Report of the New Jersey Criminal Law Revision Commission, October 1971, Introductory Note to Chapter 14 on Fornication at 189.
[9] See The Great Quotations, compiled by George Seldes, a Caesar-Stuart Book: Lyle Stuart, New York (1960), at p. 72.
[1] Carey was a seven-two decision. Justices White, Stevens and Powell filed concurring opinions. Chief Justice Burger dissented. Justice Rehnquist filed a dissenting opinion.
[2] Justice Brennan referred to Griswold v. Connecticut, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965) (use of contraceptives); Loving v. Virginia, 338 U.S. 1, 87 S.Ct. 1817, 18 L.Ed.2d 1010 (1967) (interracial marriage); Skinner v. Oklahoma, 316 U.S. 535, 62 S.Ct. 1110, 86 L.Ed. 1655 (1942) (procreation); Eisenstadt v. Baird, 405 U.S. 438, 92 S.Ct. 1029, 31 L.Ed.2d 349 (1972) (contraception); Prince v. Massachusetts, 321 U.S. 158, 64 S.Ct. 438, 88 L.Ed. 645 (1944) (family relationships); Pierce v. Society of Sisters, 268 U.S. 510, 45 S.Ct. 571, 69 L.Ed. 1070 (1925) (child rearing and education); Meyer v. Nebraska, 262 U.S. 390, 43 S.Ct. 625, 67 L.Ed. 1042 (1923) (child rearing and education); Roe v. Wade, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973) (abortion).
[3] It is clear that summary affirmances are to be taken as binding precedent, Hicks v. Miranda, 422 U.S. 332, 343-345, 95 S.Ct. 2281, 2288-2289, 45 L.Ed.2d 223, 236 (1975), on the "precise issues presented and necessarily decided by those actions." Mandel v. Bradley, 432 U.S. 173, 176, 97 S.Ct. 2238, 2240, 53 L.Ed.2d 199, 205 (1977).
[4] We note that this Court in State v. Lair, 62 N.J. 388, 396 (1973), excluded consensual sexual conduct of married couples from the interdiction of the New Jersey sodomy statute.
[5] Cf. Petition of Smith, 71 F. Supp. 968 (D.N.J. 1947) (existing fornication statute analyzed as a reflection of rules of morality and ethics).