### ALGIE ADAMS v. THE STATE.

#### No. 3220. Decided March 22, 1905.

**1.—Sodomy—Indictment—Sex Not a Material Issue.**

In a prosecution for sodomy it would make no difference whether the party with whom sodomy was committed was man or woman, and an indictment which alleged a name which may be applicable to either sex, as the person upon whom the offense was committed, and which was otherwise according to the approved form is sufficient.

**2.—Same—Confessions—Warning—Insufficient Predicate.**

Where the warning of defendant under arrest was that any statement he made might be used in evidence either for or against him, there was no sufficient predicate to admit his confessions and they should have been excluded.

**3.—Same—Insanity—Charge of Court.**

See evidence upon which it is suggested a charge on the question of permanent and temporary insanity should be given.

Appeal from the Criminal District Court of Galveston. Tried below before Hon. J. K. P. Gillaspie.

Appeal from a conviction of sodomy; penalty, two years imprisonment in the penitentiary.

The offense was committed on a boy 12 years of age. According to his testimony the crime was fully accomplished. The following is a statement of defendant's witnesses, as taken from his brief, with reference to his mental condition:

W. B. Adams, for defendant, testified: "The defendant is my son. He is 19 years old. The last Saturday in August, 1903, the defendant had been drinking for a week. The defendant had been living with us at the house. As far as the defendant's mind is concerned when he is drinking or drunk, he has no mind; he has never been right from his cradle up; he has never been very bright when he was going to school with other boys of his age, along about 10 or 12 years of age. Drinking makes the defendant lose his mind in a way; the defendant has never been right from his cradle up." On cross-examination, witness said: "Never have had the defendant confined; never did anything for the defendant's mind, just let him run along like other boys. I suppose the defendant does know right from wrong, but then he is not and has never been bright like other boys of his age. The defendant works on the Southern Pacific docks, and working there when arrested. Sometimes the defendant had sense enough to attend to his work, and sometimes he didn't, especially when he was drunk. I don't think the defendant knows right from wrong when he is drinking or drunk, not

from what I can find out. I have known the defendant to be drunk, after he was getting along in age, getting older."

Mrs. W. B. Adams, for defendant, testified: "The defendant is my son; he is now 19 years old. I don't think the defendant knows right from wrong when he is drunk. On the last Saturday in August, 1903, the defendant was drunk. The defendant has never been right from his birth; he has never been like the rest of the family; he never learned anything at school, and he has no education. His father took him and tried to get him to learn the carpenter's trade, and we tried to help him in that way for the last four years, but we never could get him to learn anything; he never was bright and could never learn anything like the rest of the children. The defendant did not stay at home all of the time; he would run away from home and go off and we would not know where he was gone. One time he went off and was gone four or five weeks, and we could not find out anything where he was gone, and we finally found him at work in the cotton mills; we hunted all around, and nobody could tell us anything about him. One time when he was about 8 years old he went off without letting us know anything about it, and was gone three weeks, and then came back home; he went away that way I don't know how many different times, and we could not do anything with him. When he would go away that way I did not know where he was gone, only knew that he was gone; he never would let me know when and where he was going. On the last Saturday in August, 1903, the defendant came home drunk, and I put him to bed, but he got up and went off again, and was brought back again to the gate and I went out and brought him upstairs and put him to bed again, then he stayed at home. When the defendant is drinking he is perfectly wild; after he has been drinking off and on he will take those spells and will be drunk and wild and does not seem to know anything." On cross-examination, witness said: "Defendant was a bad boy; he would run away from home; he was not right when he was drinking; we could not manage him or do anything with him when he was drinking; he wanted to have his own way."

Mrs. Florence Handy, for defendant, testified: "I am a sister of defendant. I have seen him when he was drinking and when he was drunk. I have seen him when he was drinking when he didn't seem to know what he was doing. I was living at home on the last Saturday in August, 1903. I can't say that the defendant is crazy when he is drunk, but he don't act rational. On the last Saturday in August, 1903, the defendant was drunk. I can't say whether the defendant knows right from wrong when he is drunk or not. I have not been with him much at such times, but I know that he naturally is not very bright, and has never been right from his birth. I know that when the defendant was younger he would go away from home without letting anyone know where he was going, and we would not know where he was; he would be gone for some time, and the family would worry about him. The defend-

ant would never learn anything, and we could not get him to stay at home; and this has gone on ever since the defendant was a small boy."

*Marseue Johnson* and *Aubrey Fuller,* for appellant.

*Howard Martin,* Assistant Attorney-General, for the State.

DAVIDSON, Presiding Judge.—Conviction for sodomy. The indictment, which is attacked, follows the form prescribed in Willson's Criminal Forms, No. 219, which is also the form prescribed by Bishop Criminal Law, volume 2, section 1013. The indictment charges the offense to have been committed upon Eric Wiley, but does not allege the sex of Eric Wiley. It is contended as the name is applicable to either sex, that the sex should have been stated; and that a venereal affair against the order of nature with a female would not be sodomy. This is not correct. Whether Eric Wiley was a male or female, the copulation being against the order of nature, such carnal knowledge would not be in the usual way, and would therefore constitute the crime of sodomy. 2 Amer. & Eng. Ency. of Law, Title Sodomy. It would make no difference whether the party with whom sodomy was committed was man or woman. Lewis v. State, 35 S. W. Rep., 372. The allegation that it was committed upon Eric Wiley is sufficient in this respect, whether the party named was male or female.

The bill of exceptions shows the predicate for the admission of the written confession of appellant was based on the warning given by F. M. Johnson, a police officer, and was in writing. This officer had defendant under arrest and in his custody at the time. He testified "I told him (defendant) that any statement he made might be used in evidence either for or against him. I am the person who warned defendant. On this predicate the court admitted said written confession in evidence. This was error. Guinn v. State, 39 Texas Crim. Rep., 257; Unsell v. State, 39 Texas Crim. Rep., 330; Pryor v. State, 51 S. W. Rep., 375; McVeigh v. State, 62 S. W. Rep., 757; Perry v. State, 61 S. W. Rep., 400.

For this error the judgment must be reversed.

Upon another trial, if the facts are the same as developed by this record, we suggest that a charge be given on the question of permanent as well as temporary insanity. This question was not raised in the record, but we suggest it in view of another trial.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*

Henderson, Judge, absent.