STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT AND
CROSS-APPELLANT, v. THOMAS A. LAIR, DEFENDANT-
APPELLANT AND CROSS-RESPONDENT.

Argued October 24, 1972—Decided March 19, 1973.

Mr. *David P. Jacobs,* Assistant Deputy Public Defender, argued the cause for defendant-appellant and cross-respondent (Mr. *Stanley C. Van Ness,* Public Defender, attorney; Mr. *Jacobs,* of counsel, and on the brief).

Mr. *Sheldon M. Simon,* Special Assistant Prosecutor, argued the cause for plaintiff-respondent and cross-appellant (Mr. *Charles M. Egan, Jr.,* Morris County Prosecutor, attorney; Mr. *Simon,* of counsel, and on the brief).

Mr. *John De Cicco,* Deputy Attorney General, argued the cause as *Amicus Curiae* (Mr. *George F. Kugler, Jr.,* Attorney General of New Jersey, attorney; Mr. *De Cicco,* of counsel and on the brief.

The opinion of the Court was delivered by

MOUNTAIN, J. Defendant was indicted for having allegedly committed the crime of rape, *N. J. S. A.* 2A:138-1, as well as the crime of sodomy, *N. J. S. A.* 2A:143-1. He was tried to a jury and convicted of both offenses. Upon appeal the Appellate Division affirmed the sodomy conviction but reversed the conviction for rape, remanding that issue for a new trial. We granted both defendant's petition and the State's cross-petition for certification. 59 *N. J.* 288 (1971).

The facts may be briefly summarized. Defendant admitted that he paid a visit to the apartment of the victim during the evening of July 18, 1969. They were only casual ac-

quaintances but he was apparently made welcome and in fact served a meal. There was testimony from which the jury might have found that later in the evening, following some desultory conversation, defendant made advances to his hostess which were at once rebuffed. He nevertheless persisted and by his threats, conduct and manner so terrified her that she feared for her life and effectively lost all power of resistance. He made her disrobe and thereafter over a period of several hours, compelled her to engage in natural sexual intercourse and in acts of anal sodomy, each upon three occasions. After he had left, in the early morning hours of July 19, the victim made her way to the home of a friend who lived nearby, where she remained until later in the forenoon when the police were notified and the victim treated in a local hospital.

The Appellate Division affirmed the conviction for sodomy but reversed the rape conviction for the reason that the trial judge did not, either in his charge or at any other point during the trial, instruct the jury that evidence of defendant's prior criminal convictions, which had been introduced, must only be considered by the jury upon the issue of credibility and for no other purpose.

■ ■ Evidence of prior criminal convictions may be introduced for the purpose of impeaching the credibility of anyone who testifies, including a defendant in a criminal trial who offers himself as a witness. *N. J. S. A.* 2A:81–12. Such evidence may not, however, be considered or taken into account in determining the defendant's guilt of the offense for which he is being tried. *State v. Sinclair,* 57 *N. J.* 56, 62–64 (1970); *State v. Manley,* 54 *N. J.* 259, 269–270 (1969); *State v. Hawthorne,* 49 *N. J.* 130 (1967). A limiting instruction to this effect should be given by the trial court. *Evidence Rule* 6. Here this was not done. Defendant's counsel, however, did not request that the court include such an instruction in its charge nor was any objection or exception taken to its omission. The point came before

the Appellate Division — as it now comes before us — as plain error.

Thus the issue is whether this failure to charge or otherwise instruct the jury was "clearly capable of producing an unjust result," under *R.* 2:10–2, commonly known as the "plain error" rule, or whether it may fairly be considered harmless error, lacking the capacity to prejudice the defendant. After a very careful study of the entire record we have reached the conclusion that the error did not require a reversal. We base this decision very largely upon the overwhelming nature of the testimony pointing to defendant's guilt and the relative insignificance of the testimonial references to his prior convictions. His own narrative of the events, uncorroborated in any way and essentially implausible, included the admission that he had had normal sexual relations with the victim, although he insisted this had been with her consent. Upon being faced with an inculpatory statement made by him shortly after his arrest, he in effect admitted the acts of sodomy. That the trial judge concurred in the result reached by the jury is apparent from his remarks in denying a motion for a new trial. As we have said, no conclusion other than guilt seems tenable on this rceord, leaving aside all reference to defendant's past convictions.

Where a failure to inform the jury that evidence of prior convictions must be limited solely to the issue of credibility is urged as plain error, courts have not hesitated to sustain convictions where no real prejudice can be shown. *United States v. Carter,* 401 *F.* 2d 748, 750 (3rd Cir. 1968), *cert.* den. 393 *U. S.* 1103, 89 *S. Ct.* 905, 21 *L. Ed.* 2d 797 (1969); *Nutt v. United States,* 335 *F.* 2d 817, 818–819 (10th Cir. 1964), *cert.* den. 379 *U. S.* 909, 85 *S. Ct.* 203, 13 *L. Ed.* 2d 180 (1964); *Commonwealth v. Cook,* 351 *Mass.* 231, 218 *N. E.* 2d 393, 397 (1966), *cert.* den. 385 *U. S.* 981, 87 *S. Ct.* 529, 17 *L. Ed.* 2d 443 (1966); *People v. Durham,* 66 *Ill. App.* 2d 163, 212 *N. E.* 2d 765, 768 (1965). But see *People v. Camel,* 11 *Mich. App.* 219, 160 *N. W.* 2d 790 (1968). *Cf.*

*State v. McNair,* 59 *N. J. Super.* 453, 458–459 (App. Div. 1960) ; *State v. Baker,* 90 *N. J. Super.* 38 (App. Div. 1966). We hold that this failure to instruct the jury, presented here as plain error, did not warrant a reversal.

This brings us to a consideration of the sodomy charge. Defendant urges three principal grounds in his attack upon this conviction. He first contends that the statute, *N. J. S. A.* 2A:143–1, is unconstitutionally vague and hence violative of due process; secondly, that the act he is charged with having committed does not in fact fall within the interdiction of the statute and finally, that unless consent may be deemed a valid defense, the legislation is unconstitutional.

The enactment reads as follows:

Sodomy, or the infamous crime against nature, committed with man or beast, is a high misdemeanor, and shall be punished by a fine of not more than $5,000, or by imprisonment for not more than 20 years, or both. [*N. J. S. A.* 2A:143–1]

█ Turning to defendant's first argument, it is certainly true that penal legislation must define forbidden conduct with sufficient clarity to enable one to understand what he may or may not do to avoid infringing the legislative command.

No one may be required at peril of life, liberty or property to speculate as to the meaning of penal statutes. All are entitled to be informed as to what the State commands or forbids. [*Lanzetta v. State of New Jersey,* 306 *U. S.* 451, 453, 59 *S. Ct.* 618, 619, 83 *L. Ed.* 888, 890 (1939)]

Or, as this Court has said,

At the outset it must be recognized that a penal statute must specify the elements of the offense which it proscribes with such a reasonable degree of certainty as to apprise those to whom it is addressed of the standard of conduct proscribed, so that men of common intelligence need not necessarily guess at its meaning or differ as to its application. [*State v. Joas,* 34 *N. J.* 179, 185 (1961)]

It must also be apparent that vague statutory language may be conducive to an interpretation more responsive to the moral predilections of the adjudicating tribunal than to legislative intent. *Harris v. State,* 457 *P.* 2d 638 (Alaska 1969).

Our statute does not define "sodomy" nor does it specify what is meant by a "crime against nature." It does, however, equate the two. *State v. Morrison,* 25 *N. J. Super.* 534, 536 (Cty. Ct. 1953). Statutes employing identical or similar language are to be found in about one-half of our states. Note, "Sodomy Statutes: The Question of Constitutionality," 50 *Neb. L. Rev.* 567, 568 (1971). A failure to set forth more precisely the nature of this kind of proscribed conduct has always been attributed to legislative desire to avoid the indelicacy of explicit description. *State v. Morrison, supra,* at 536. While the courts of at least two states have held or indicated that the words "crime against nature," standing alone, are impermissibly vague and hence violative of due process, *Harris v. State, supra,* 457 *P.* 2d 638 (Alaska 1969); *Franklin v. State,* 257 *So.* 2d 21, (Fla. 1971), the majority of jurisdictions have ruled to the contrary, accepting the view that the words, "crime against nature," had a definite meaning at common law which may properly be attributed to them today. No state appears to have stricken as unduly vague a statute which, like ours, includes also the word "sodomy." Cases upholding identical or similar statutes against attack on the ground of vagueness include *Hogan v. State,* 84 *Nev.* 372, 441 *P.* 2d 620 (1968); *People v. Vasquez,* 39 *Mich. App.* 573, 197 *N. W.* 2d 840 (1972); *State v. Crawford,* 478 *S. W.* 2d 314 (Mo. 1972); *State v. Trejo,* 83 *N. M.* 511, 494 *P.* 2d 173 (1972); *Dixon v. State,* 268 *N. E.* 2d 84 (Ind. 1971); *State v. White,* 217 *A.* 2d 212 (Me. 1966); *Warren v. State,* 489 *P.* 2d 526 (Okl. Cr. 1971). We hold that our statute, also, is not unconstitutionally vague.

Defendant's argument that his conduct does not come within the embrace of the statute rests upon the asserted

proposition that the acts prohibited are only those performed homosexually and not those performed heterosexually. Here, of course, defendant is charged with having assaulted a person of the opposite sex in the forbidden manner. He claims this kind of conduct to be beyond the reach of the enactment. Defendant's contention rests largely upon an historical review of the legislative and judicial treatment this kind of crime has received in England and in this country. Suffice it to say that we do not find this argument persuasive, nor are we aware of any aspect of public policy or private morality that should lead us to favor such a limited interpretation of the statutory language. Furthermore we note that the precise issue has been resolved adversely to the position taken by defendant wherever else it has been presented. *Daniels v. Maryland,* 237 *Md.* 71, 205 *A.* 2d 295 (1964); *People v. Askar,* 8 *Mich. App.* 95, 153 *N. W.* 2d 888 (1967); *People v. Vasquez, supra,* 39 *Mich. App.* 573, 197 *N. W.* 2d 840 (1972); *LeFavour v. State,* 77 *Okl. Cr.* 383, 142 *P.* 2d 132 (1943); *Lewis v. State,* 36 *Tex. Cr. R.* 37, 35 *S. W.* 372 (1896); *Adams v. State,* 48 *Tex. Cr. R.* 90, 86 *S. W.* 334 (1905); *State v. Witham,* 406 *Ill.* 593, 94 *N. E.* 2d 506 (1950); *Connell v. State,* 215 *Ind.* 318, 19 *N. E.* 2d 267 (1939); *Riley v. Garrett,* 219 *Ga.* 345, 133 *S. E.* 2d 367 (1963); *State v. Putnam,* 78 *N. M.* 552, 434 *P.* 2d 77 (1967). We conclude that our statute includes and prohibits heterosexual acts such as are involved here.

██ The trial judge refused to instruct the jury that consent is a defense to a charge of sodomy. In so doing he adhered to the generally accepted rule which has always prevailed in this State. 2 *Schlosser, Criminal Laws of New Jersey* (3rd ed. 1970) § 95.5; 2 *Wharton, Criminal Law and Procedure* (Anderson ed. 1957); 81 *C. J. S. Sodomy* § 2, p. 372. Defendant's final challenge to the statute rests upon this failure to charge. The argument implicates several constitutional theses. It is initially pointed out that in *Griswold v. Connecticut,* 381 *U. S.* 479, 85 *S. Ct.* 1678, 14 *L. Ed.* 2d 510 (1965), the Court declared invalid several

statutes of the State of Connecticut which imposed penalties upon persons practicing birth control and upon those who aided them in so doing. The appellants had given information, instruction and medical advice to *married persons* as to appropriate and available means of preventing conception. The statutes were held unconstitutional in that they sought to affect and control the marriage relationship, the private nature of which the Court declared to be constitutionally protected from intrusion by the State. *Griswold* thus recognized a constitutional right to marital privacy, a right which in that case was violated when the state sought to impose criminal sanctions upon those who practiced birth control or who propagated its use. Defendant recognizes this right of marital privacy and, as one step in his argument, claims that it extends also to protect what may be deemed deviate sexual acts when practiced consensually in private by a married couple.[1] We agree and now hold that our statute does not include within its prohibition the conduct of married couples.

Thus we reach the final thrust of defendant's thesis, that if such consensual conduct is protected when practiced by married couples, the doctrine of the equal protection of the laws requires that it be equally licensed when practiced by consenting unmarried persons; hence our sodomy statute violates the Constitution unless it recognizes this latter right by providing that consent may be a defense.

We decline to accept this argument. The opinion of Justice Douglas in *Griswold* eulogizes the married state, stresses the intimacies of married life and concludes that privacy is so important to a fulfillment of the marriage relationship as to justify recognition as a right of constitutional dimen-

---

[1]"The import of the *Griswold* decision is that private, consensual, marital relations are protected from regulation by the state through the use of a criminal penalty." *Cotner v. Henry*, 394 *F.* 2d 873, 875 (7th Cir. 1968), *cert.* den. 393 *U. S.* 847, 89 *S. Ct.* 132, 21 *L. Ed.* 2d 118 (1968).

sion. It is a rather obvious *non sequitur* that as a matter of equal protection some similar or equal right to privacy must be found to exist in order to protect the sexual conduct of the unmarried. Much of our law, criminal and otherwise, bespeaks the contrary.

Defendant urges that *Eisenstadt v. Baird,* 405 *U. S.* 438, 92 *S. Ct.* 1029, 31 *L. Ed.* 2d 349 (1972) requires a different result. There the Court considered a Massachusetts statute making it a crime for anyone to sell, lend or give away any kind of birth control device except, under prescribed conditions, to married persons. Unmarried persons were to be entirely excluded from access to contraceptives. The Court struck down the statute as being violative of equal protection, saying that whatever the rights of an individual to access to contraceptives may be, the rights of the married and unmarried must be alike. The Court could discern no rational basis to justify making the availability of contraceptives depend upon marital status. It will be seen that the case touches in no way upon the right to marital privacy with which *Griswold* is concerned. In *Hughes v. State,* 14 *Md. App.* 497, 287 *A.* 2d 299 (1972), *cert.* den. 409 *U. S.* 1025, 93 S. Ct. 469, 34 *L. Ed.* 2d 317 (1972) defendant was convicted of sodomy and pressed the same argument that is advanced here, based upon his reading of *Griswold.* The Maryland court rejected the contention, pointing out that,

[t]he rationale of the *Griswold* holding flows from its eulogy of the marital status and lacking such status the rule has no foundation. In such circumstances we see no invidious discrimination between married individuals and unmarried individuals so as to deny equal protection of the laws in any event. [287 *A.* 2d, *supra,* at 305]

See also *Raphael v. Hogan,* 305 *F. Supp.* 749, 756 (D. C. S. D. N. Y. 1969).

We think it worth mentioning that several of the problems raised by the arguments presented upon this appeal would readily respond to appropriate legislation. We call especial attention to provisions appearing in the proposed

*New Jersey Penal Code* submitted as part of the *Final Report of the New Jersey Criminal Law Revision Commission* (1971). Section 2C:14–2 is entitled "Sodomy and Related Offenses." This proposal "excludes from the criminal law all sexual practices not involving force, adult corruption of minors, or public offense . . . based on the grounds that no harm to the secular interests of the community is involved in a typical sex practice in private between consenting adult partners. This area of private morals is the distinctive concern of spiritual authorities." 2 *N. J. Penal Code: Commentary,* 196. The wisdom of this or of any other like proposal is, of course, purely a matter for legislative determination.

We have examined the other arguments made by defendant and find them to be entirely without merit.

The judgment of the Appellate Division setting aside the conviction of rape is reversed and the judgment of conviction reinstated. In all other respects the judgment of the Appellate Division is affirmed.

WEINTRAUB, C. J. (concurring). I concur in the result although I have reservations as to the constitutionality of the application of the sodomy statute to a consensual act between adults committed in private. As to a homosexual act thus committed, I doubt the existence of a public interest sufficient to justify an edict that the homosexual shall behave as a heterosexual or not at all. The failure to recognize a status within which homosexuals may lawfully follow the dictates of their nature makes the application of punitive measures still more questionable. And I doubt that in dealing criminally with extramarital sexual relations between heterosexuals the Legislature may deal differently with a deviant act or may in any event authorize the same punishment for a deviant act whether consented to or not. That the punitive approach is futile seems evident. Consenting adults are prosecuted rarely if at all.

But this is not the case in which to grapple with the constitutional issue. The factual versions of the State and of

the defense were such that there was no room for a finding that the anal penetration was consented to even though the vaginal penetration was not. The finding that there was a rape necessarily involved a finding that there was an attack upon the victim and that all of the injuries were inflicted against her will.

*For reversal in part and affirmance in part*—Chief Justice WEINTRAUB, Justices JACOBS, HALL and MOUNTAIN, and Judge SULLIVAN—5.

*Opposed*—None.