166 N.J. Super. 224 (1978)
399 A.2d 667
THE STATE OF NEW JERSEY,
v.
JOHN HENRY HILL, DEFENDANT.
Superior Court of New Jersey, Law Division.
Decided December 1, 1978.
*227 Mr. Steven B. Lieberman for defendant (Messrs. Bowers, Rinehart, Murphy & O'Brien, attorneys).
Ms. Maria M. DeFilippis, Legal Assistant to the Prosecutor, for the State (Mr. David Linett, Somerset County Prosecutor, attorney).
MEREDITH, J.S.C.
This case comes before the court on defendant's motion to dismiss each of the counts of the five-count indictment returned against him. Indictment 308-77-M charged in the first and third counts, respectively, that defendant, then a resident at the New Jersey Neuropsychiatric *228 Institute in Skillman, forcibly raped Eleanor Tintle and Justine Harvey, in violation of N.J.S.A. 2A:138-1. The second count charged defendant with sodomizing Eleanor Tintle, in violation of N.J.S.A. 2A:143-1, and the fourth and fifth counts respectively charged defendant with carnal knowledge of Eleanor Tintle and Justine Harvey, inmates of an institution for feeble-minded or mentally ill women, in violation of N.J.S.A. 2A:138-2.
Defendant urges dismissal of the first and third counts on the ground that there was insufficient evidence before the grand jury to establish the use of force by defendant and lack of consent by the alleged victims. He also argues that there was no evidence of force before the grand jury with respect to count two, charging sodomy, and that consensual sodomy is protected by the constitutional right of privacy. As to the fourth and fifth counts, defendant argues that there was insufficient evidence before the grand jury to establish that Eleanor Tintle and Justine Harvey were residents of an institution for feeble-minded or mentally ill women, that N.J.S.A. 2A:138-2 denies equal protection of the law on the basis of gender, and that it denies due process of law by creating an irrebuttable presumption that female inmates of mental institutions are incapable of consenting to sexual relations. Finally, defendant contends that the statute has been selectively enforced against him, thus denying him due process of law. For the reasons discussed below, defendant's motion to dismiss the indictment is granted as to the first, second, fourth and fifth counts, and is denied as to the third count.

I. Sufficiency of Evidence Before the Grand Jury
A motion to dismiss an indictment is addressed to the sound discretion of the court, which discretion should not be exercised to grant the requested relief, except upon the "clearest and plainest ground." State v. Chandler, 98 N.J. Super. 241, 245 (Cty. Ct. 1967); State v. Weleck, 10 *229 N.J. 355 (1952). Although an indictment is presumed valid, "a defendant with substantial grounds for having an indictment dismissed should not be compelled to go to trial to prove the insufficiency." State v. Graziani, 60 N.J. Super. 1, 22 (App. Div. 1959), aff'd 31 N.J. 538 (1960).
At the beginning of its term of service the grand jury panel is instructed as follows:
* * * after you have heard the evidence, you are to decide whether a prima facie case has been made out. This means that you are to determine whether or not the State has presented evidence which, by itself if unexplained or uncontradicted indicates first that a crime has been committed, and that the defendant committed it, and thus a conviction of the accused would be justified. [31 N.J. Practice (Arnold, Criminal Practice and Procedure), § 328 at 296 (1976)]
While evidence as to each element of a prima facie case must thus be presented to the grand jury to support the return of an indictment, the quantum of evidence required as to each element is not great. In State v. Donovan, 129 N.J.L. 478, 483 (Sup. Ct. 1943), it was held that an indictment returned without "some evidence" to support the charges amounted to grand jury misconduct, and that such an indictment should be quashed. Although "very little evidence" will suffice, (Holt v. United States, 218 U.S. 245, 31 S.Ct. 2, 54 L.Ed. 1021 (1910); Costello v. United States, 350 U.S. 359, 76 S.Ct. 406, 100 L.Ed. 397 (1956)), "where evidence is clearly lacking it is the duty of the court to set aside the charges." State v. Ferrante, 111 N.J. Super. 299, 304 (App. Div. 1970).
To withstand defendant's challenge in the instant case, the first and third counts of the indictment charging forcible rape must be supported by some evidence in the transcript of grand jury testimony, as to the essential elements of force used by defendant and nonconsent on the part of the alleged victims. See State v. Terry, 89 N.J. Super. 445, 449 (App. Div. 1965).
The grand jury transcript reveals that Eleanor Tintle, the alleged victim in the first count, did not testify. Although *230 Justine Harvey initially denied ever being in a place with Eleanor Tintle, she later testified that "[Eleanor] got her clothes taken off and he got her first," that "[he] told Eleanor to lay down" and that "[he] [t]ook her and fuck[ed] her." Dory Ann Funchness, an assistant at the Neuropsychiatric Institute, testified that Eleanor has reported to her that "some man had just did it to her * * * and then she said he was doing it to somebody else." Detective Marilyn Pierangeli testified that at a photographic lineup, Eleanor Tintle identified defendant and indicated that he had pulled her pants off. Joan Cunningham, Assistant Director of Residential Living at the Neuropsychiatric Institute, testified that when defendant was questioned about the incident, [he] said that he had done it to the girls." In sum, this testimony indicated only that defendant had taken an active role in the alleged act of sexual intercourse, while Eleanor Tintle had assumed a role of passivity. Such evidence cannot alone support a rational inference that force was used by defendant or that Eleanor Tintle did not consent to having sexual relations with him. Moreover, even if uncontradicted, evidence that one partner in a sexual act was aggressive while the other partner was passive, clearly could not in and of itself justify conviction on a charge of forcible rape. Because count one of the indictment was returned by the grand jury without any rational evidence of force or nonconsent in the testimony before it, this count should be and is dismissed. State v. Donovan and State v. Ferrante, supra. Defendant should not be forced to go to trial to prove the insufficiency of this count of the indictment. State v. Graziani, supra. The State is free, however, to attempt to reindict if additional evidence, indicative of the requisite force and nonconsent, is brought before the grand jury.
In contrast, the third count of the indictment, charging forcible rape of Justine Harvey, is amply supported by evidence of both force and nonconsent in the grand jury testimony. In addition to the alleged victim's testimony that *231 "he got me and he did it to me," Justine Harvey also testified that defendant later threatened to choke her if she left the room. Moreover, she specifically testified before the grand jury that she had not wanted to have sex with defendant. Detective Pierangeli testified that on the night of the incident Justine Harvey told her that she had been raped, and later identified defendant's photograph as that of the perpetrator. Joan Cunningham also testified that Justine reported that she had been raped. This testimony quite clearly placed "some evidence" of each of the essential elements of force and nonconsent before the grand jury, and defendant's motion to dismiss the third count of the indictment is denied.
Under the second count of the indictment, charging sodomy upon Eleanor Tintle in violation of N.J.S.A. 2A:143-1, force is not an essential element of the offense.[1] See State v. Lair, 62 N.J. 388 (1973). Nonetheless, defendant's argument, to be discussed below, that consensual sodomy is protected by the right of privacy, requires a review of the grand jury testimony in order to determine whether this argument is applicable to the instant case. The transcript indicates little more than that Eleanor Tintle and Justine Harvey reported the incident as an act of sodomy done by defendant upon Eleanor Tintle. Once again, the mere characterization of defendant in an active role and Eleanor Tintle in a passive role cannot serve to imply that force was used. Similarly, Detective Pierangeli's testimony that "a doctor cannot say that it was forcible but there was tearing in the rectum of Eleanor Tintle," also indicates that at most, the grand jury had before it evidence of consensual sodomy. Thus, it is appropriate for this court to deal with the question of the constitutionality of N.J.S.A. 2A:143-1 in a consensual setting.
*232 Finally, as to the fourth and fifth counts, charging carnal knowledge of female inmates of institutions for the feeble-minded or mentally ill, defendant argues that there was insufficient evidence before the grand jury to show that Eleanor Tintle and Justine Harvey were residents at such an institution. A review of the grand jury testimony, however, shows that in addition to Justine Harvey's testimony that her residence was Morrow West Hospital, several witnesses employed at the Neuropsychiatric Institute testified that both women were patients or residents of the facility in which the witnesses worked. Thus, it is clear from the transcript that the grand jury had before it ample evidence that the alleged victims were residents at the Neuropsychiatric Institute, and the fourth and fifth counts of the indictment will not be dismissed on this ground.

II. Consensual Sodomy
In State v. Lair, supra, the New Jersey Supreme Court held that consensual sodomy between unmarried persons was not protected by the right of privacy of the marital relationship that had been recognized in Griswold v. Connecticut, 381 U.S. 479, 85 S.Ct. 1687, 14 L.Ed.2d 510 (1965), and Eisenstadt v. Baird, 405 U.S. 438, 92 S.Ct. 1029, 31 L.Ed.2d 349 (1972). More recently, however, State v. Saunders, 75 N.J. 200 (1977), in dealing with New Jersey's fornication statute, N.J.S.A. 2A:110-1, extended the right or privacy to protect consensual sexual relations between unmarried persons, and suggested that the issue in State v. Lair, supra, would be decided differently if an appropriate case arose at that time. See State v. Saunders, supra, which stated that
* * * State v. Lair, 62 N.J. 388, may have been a poor case in which to discuss the problems of sexual relations between unmarried persons. In construing our sodomy statute, N.J.S.A. 2A:143-1, we were not faced with any factual basis for finding that consent had been given for the sexual acts performed there. Thus, there was *233 no reason to apply the constitutional protection which we find today to unmarried persons. [at 217, n. 7]
This court is convinced that there is no basis for differentiating between fornication and consensual sodomy between unmarried persons. As the court in State v. Saunders, supra, noted:
Fornication may be abhorrent to the morals and deeply held beliefs of many persons. But any appropriate "remedy" for such conduct cannot come from legislative fiat. Private personal acts between two consenting adults are not to be lightly meddled with by the State. The right of personal autonomy is fundamental to a free society. Persons who view fornication as opprobrious conduct may seek strenuously to dissuade people from engaging in it. However, they may not inhibit such conduct through the coercive power of the criminal law. [at 220; emphasis supplied]
See also, State v. Ciuffini, 164 N.J. Super. 145 (App. Div. 1978), which held that State v. Lair, supra, was implicitly overruled by State v. Saunders, supra. In order to protect the privacy of sexual conduct between consenting adults, a charge of violating N.J.S.A. 2A:143-1 must include the use of force as an essential element. As discussed above, the testimony before the grand jury in the instant case was completely devoid of evidence indicating that force was used by defendant. Therefore, because this court concludes that consensual sodomy was alleged in count two of the indictment, which conduct is protected by the right of privacy, this count of the indictment must be dismissed.

III. Carnal Knowledge of Inmates of Institutions for Mentally Incompetent Females, N.J.S.A. 2A:138-2
Defendant first contends that N.J.S.A. 2A:138-2, as drawn,[2] protecting only female inmates of mental institutions, *234 denies equal protection of the law on the basis of gender. The State correctly argues that the vast majority of cases dealing with equal protection challenges to rape and carnal abuse statutes on the basis of gender have upheld such legislation in spite of the fact that either on its face or by definition it protects only females from an offense that can be committed directly only by males. See State v. Thompson, 162 N.J. Super. 302 (Law Div. 1978); State v. Brothers, 384 A.2d 402 (Del. Super. Ct. 1978); State v. Ewald, 63 Wis.2d 165, 216 N.W.2d 213 (Sup. Ct. 1974); Brooks v. State, 24 Md. App. 334, 330 A.2d 670 (Ct. Spec. App. 1975); Finley v. State, 527 S.W.2d 553 (Tex. Cr. App. 1975); State v. Kelly, 111 Ariz. 181, 526 P.2d 720 (Sup. Ct. 1974), cert. den. 420 U.S. 935, 95 S.Ct. 1143, 43 L.Ed.2d 411 (1975); State v. Price, 215 Kan. 718, 529 P.2d 85 (Sup. Ct. 1974); People v. Medrano, 24 Ill. App.3d 429, 321 N.E.2d 97 (App. Ct. 1974). Contra, Meloon v. Helgemoe, 564 F.2d 602 (1 Cir.1977), cert. den. 436 U.S. 949, 98 S.Ct. 2858, 56 L.Ed. 2d 793 (1978).
In order to withstand an equal protection challenge, a classification on the basis of gender must be shown to be substantially related to important governmental objectives. Craig v. Boren, 421 U.S. 190, 97 S.Ct. 451, 50 L.Ed.2d 397 (1976). The State contends that in the instant case the purposes served by the gender-based classification are primarily functions of physiological differences between men and women: prevention of pregnancies among the institutionalized mentally ill, related problems of policing such institutions and dealing with possible pregnancies, and prevention of physical injury which is more likely to occur to women than to men in cases of nonconsensual sexual relations. Additionally, the State argues that it has an interest in protecting those feeble-minded or mentally ill women who are incapable of knowing consent to sexual relations. Certainly, the statute *235 in question here could be more narrowly drawn to protect some of these interests, either by limiting its coverage to female inmates of child-bearing age or by determining on a case-by-case basis whether a particular individual was in fact incapable of consent. See Annotation, "Rape  Mentally Deficient Women," 31 A.L.R.3d 1227 (1970). Nonetheless, the equal protection analysis set forth in Craig v. Boren, supra, does not require that the state choose the least drastic means in order to effectuate a gender-based classification. This court finds that although N.J.S.A. 2A:138-2 protects only females and punishes only males, this distinction is substantially related to important governmental interests and does not deny equal protection on the basis of gender. As the court noted in Brooks v. State, supra:
The equality of the sexes expresses a societal goal, not a physical metamorphosis. It would be anomalous indeed if our aspirations toward the ideal of equality under the law caused us to overlook our disparate human vulnerabilities. [330 A.2d at 673]
Defendant next argues that N.J.S.A. 2A:138-2 denies due process of law in that it creates an irrebuttable presumption that female inmates of institutions for the mentally ill are incapable of consenting to sexual intercourse. In Vlandis v. Kline, 412 U.S. 441, 93 S.Ct. 2230, 37 L.Ed.2d 63 (1973), the Supreme Court struck down a Connecticut statute under which a state university student's status as a nonresident for tuition purposes was irrebuttably presumed to continue for the entire period of attendance. The court held that the Fourteenth Amendment's Due Process Clause was violated by the permanent and irrebuttable presumption of non-residence, "when that presumption is not necessarily or universally true in fact, and when the state has reasonable alternative means of making the crucial determination." Id. at 452, 93 S.Ct. at 2236. The Vlandis court also noted that administrative convenience alone is insufficient to justify an irrebuttable presumption where other reasonable and practicable *236 methods exist for making the determination. Id. at 451, 93 S.Ct. at 2236.
Similarly, in Stanley v. Illinois, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972), the Supreme Court struck down as violative of due process an Illinois statute which mandated state custody of illegitimate children upon the death of their mother, and irrebuttably presumed all unmarried fathers to be unfit to raise their children. The court held that although it is possible that "most unmarried fathers are unsuitable and neglectful parents * * * all unmarried fathers are not in this category; some are wholly suited to have custody of their children." Id. at 654, 92 S.Ct. at 1214. Thus, the court held that the Due Process Clause requires a hearing to determine the unmarried father's fitness as a parent, and noted that the state's interest in administrative convenience was insufficient to justify the denial of a hearing. Id. at 658, 92 S.Ct. at 1216. In Cleveland Board of Ed. v. LaFleur, 414 U.S. 632, 94 S.Ct. 791, 39 L.Ed.2d 52 (1974), the Supreme Court invalidated under the Fourteenth Amendment's Due Process Clause, the rules of two school boards which required every pregnant teacher to take unpaid maternity leave at a specified point before the expected birth of the child, and to remain on leave until a specified point thereafter, regardless of the individual teacher's ability to work during the later stages of pregnancy. As the court noted:
* * * the provisions amount to a conclusive presumption that every pregnant teacher who reaches the fifth or sixth month of pregnancy is physically incapable of continuing. There is no individualized determination by the teacher's doctor  or the school board's  as to any particular teacher's ability to continue at her job. The rules contain an irrebuttable presumption of physical incompetency, and that presumption applies even when the medical evidence as to an individual woman's physical status might be wholly to the contrary. [Id. at 644, 94 S.Ct. at 798]
In the instant case the State argues that the statute in question creates no presumption at all; rather, it seeks "to *237 protect those who may or may not be able to give fully cognizant consent to intercourse." The State is correct that no presumption is written into the statute itself. Other jurisdictions have rejected challenges of irrebuttable presumption to statutory rape laws on the theory that the statutes merely prohibited certain conduct and did not involve presumptions of any kind. See People v. McKellar, 81 Cal. App.3d 367, 146 Cal. Rptr. 327 (D. Ct. App. 1978); State v. Drake, 219 N.W.2d 492, 496 (Iowa Sup. Ct. 1974). In Cleveland Board of Ed. v. LaFleur, supra, however, the school board rules did not on their face contain any presumption as to the fitness of teachers to work during pregnancy. Nonetheless, the Supreme Court there dealt with the effect of the mandatory maternity leave provisions, stating that "the provisions amount to a conclusive presumption that every pregnant teacher * * * is physically incapable of continuing." 414 U.S. at 644, 94 S.Ct. at 798 (emphasis supplied). See also, Turner v. Employment Security Dep't, 423 U.S. 44, 96 S.Ct. 249, 46 L.Ed.2d 181 (1975). Here, the State's contention that N.J.S.A. 2A:138-2 is designed to protect those who may or may not be capable of knowing consent, leads to the inescapable conclusion that the means chosen to provide this protection is a blanket assumption that all women confined to institutions for the feeble-minded or mentally ill are incapable of consenting to sexual relations. See Bienen, "Rape I," 3 Women's Rts. L. Rptr. No. 2, 45, at 47 (1976). The State argues that, at most, the statute in question here creates a permissible inference rather than an irrebuttable presumption. The statute, however, purports to punish acts of carnal knowledge of a certain class of women, "with or without [their] consent * * *." N.J.S.A. 2A:138-2. Certainly as far as those charged with violating the statute are concerned, the presumption is an irrebuttable one.
Statutes from other jurisdictions regarding sexual relations with the mentally ill require a showing that the victim was in fact incapable of consenting or was so mentally *238 diseased as to be unable to oppose an unwanted act of carnal knowledge. See Annotation, "Rape  Mentally Deficient Women," supra, and cases cited therein. Such statutes provide a reasonable alternative means of protecting those who may be incapable of knowingly consenting to sexual acts, without employing an irrebuttable presumption. Although the use of such a procedure at trial may be both complicated and time consuming, administrative convenience alone does not satisfy the requirements of due process. As the court remarked in Vlandis v. Kline, supra,
In Stanley v. Illinois, supra, however, the Court stated that "the Constitution recognizes higher values than speed and efficiency." 405 U.S. at 656, 92 S.Ct. at 1215. The State's interest in administrative ease and certainty cannot, in and of itself, save the conclusive presumption from invalidity under the Due Process Clause where there are other reasonable and practicable means of establishing the pertinent facts upon which the State's objective is premised. [412 U.S. at 451, 93 S.Ct. at 2236]
As presently written, therefore, N.J.S.A. 2A:138-2 violates the Due Process Clause of the Fourteenth Amendment because it employs a permanent and irrebutable presumption that is neither necessarily nor universally true. In view of the fact that this court cannot reinterpret N.J.S.A. 2A:138-2 in a manner which would render it constitutional without altering the clear legislative intent that consent is immaterial, the statute must fall as a violation of due process, and counts four and five of the indictment will be dismissed.
The defendant's final argument, that N.J.S.A. 2A:138-2 has been selectively enforced against him, requires only brief discussion here since the statute itself has been declared unconstitutional. As a matter of federal constitutional law, a claim of selective enforcement requires a showing of clear and intentional discrimination, which is not evident in this case. See Oyler v. Boles, 368 U.S. 448, 82 S.Ct. 501, 7 L.Ed. 2d 446 (1962); Snowden v. Hughes, 321 U.S. 1, 64 S.Ct. 397, 88 L.Ed. 497 (1944). In the present posture *239 of this case it is unnecessary to determine whether a less stringent standard might be invoked under the New Jersey Constitution, as suggested by State v. Saunders, supra, 75 N.J. at 207, n. 3.
In conclusion, for the reasons discussed above, counts one, two, four and five of Indictment 308-77-M are dismissed. The State is free to seek reindictment under the first and second counts if additional evidence can be adduced before the grand jury.
NOTES
[1] N.J.S.A. 2A:143-1 provides: "Sodomy, or the infamous crime against nature, committed with man or beast, is a high misdemeanor * * *."
[2] N.J.S.A. 2A:138-2 provides: "Any person who has carnal knowledge of a female inmate of any home or institution for feeble-minded or mentally ill females, or of any home or training school for the feeble-minded, with or without her consent, is guilty of a misdemeanor."