Roberto ESPINOSA, Jr., Appellant,

v.

The STATE of Texas, Appellee.

No. 14–94–00550–CR.

Court of Appeals of Texas,
Houston (14th Dist.).

May 4, 1995.
Rehearing Overruled June 1, 1995.

Mark J. Kelly, Houston, for appellant.

B. Warren Goodson, Jr., Galveston, for appellee.

Before MURPHY, ANDERSON and HUDSON, JJ.

## OPINION

HUDSON, Justice.

Appellant was convicted of murder by a jury. The court assessed his punishment at confinement in the Institutional Division of the Texas Department of Criminal Justice for a term of 35 years. We affirm the judgment of the trial court.

In his first point of error, appellant contends the evidence is insufficient to sustain the jury's verdict. Reviewing the evidence in the light most favorable to the verdict, we must decide whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *Butler v. State*, 769 S.W.2d 234, 239

(Tex.Crim.App.1989). We are also mindful that a jury has an opportunity to observe the demeanor of the witnesses and to evaluate their credibility. *Chambers v. State,* 805 S.W.2d 459, 461 (Tex.Crim.App.1991). A jury can choose to believe all, some, or none of the testimony presented by the parties. *Dade v. State,* 848 S.W.2d 830, 832 (Tex.App.Houston [14th Dist.] 1993, no pet.).

In the early morning hours of May 23, 1992, nineteen-year-old Tony Galavez was "hanging out" and drinking beer with his friends in Galveston, Texas. Two young girls left the party and went to a nearby convenience store, where they encountered 15 or 20 young men, including appellant, who had recently arrived from Houston. The girls were accosted, rudely touched, and frightened by the men. When the girls returned to the party and reported what had occurred, Galavez and his friends went to the convenience store in search of the offenders.

At the store they met up with the Houston youths. Galavez got out of a pickup truck and walked toward the crowd saying, "What the hell is going on out here?" A member of the Houston crowd named Roy Martinez drew a pistol from his pants and pointed it at Galavez, saying, "Who wants to die?" Galavez responded, "Why do you need a gun?" When appellant also drew a gun, Galavez and the group from Galveston, who were unarmed, began to slowly retreat toward their vehicles. As Galavez and his brother backed up against their pickup, the Houston crowd began to shout, "Shoot him. Shoot him." When the two men attempted to slide around behind the pickup, several shots were fired. Galavez was hit in the chest and mortally wounded.

Subsequent investigation revealed that two bullets struck the passenger door of the pickup truck. Another bullet entered through the open passenger's window and passed through the back glass of the cab. This bullet struck Galavez as he was standing behind the bed of the truck. Police recovered two bullets from the interior of the truck. Three fragments of a single bullet were recovered from the victim's body. Police found three empty 9 mm casings in close proximity of each other in the convenience store parking lot.

When police first interviewed Martinez, he claimed he had brandished a "BB" gun, not a firearm, the night of the murder. Several weeks later he admitted he had been carrying a 9 mm pistol, but denied firing the weapon. Ballistics analysis confirmed that none of the bullets or casings found at the scene had been fired or ejected from Martinez' weapon.

Testimony from the numerous witnesses to the murder is conflicting. Appellant contends the evidence is insufficient to show that he fired the fatal shot which struck Galavez because two men at the crime scene possessed 9 mm pistols. Appellant, however, gave police a written statement in which he admitted firing into the crowd and at a pickup truck.

After Martinez drew a weapon, appellant told police that he also armed himself with a 9 mm pistol. In his written statement, appellant said, "I just turned around and shot toward the crowd and the truck and hit the truck several times." The weapon used by appellant was never recovered. A rational jury could have found the essential elements of murder from these facts beyond a reasonable doubt. Appellant's first point of error is overruled.

■ In his second point of error, appellant argues his written confession was involuntary and should not have been admitted in evidence against him. Appellant contends he did not voluntarily confess because (1) he gave the statement while under the influence of alcohol, (2) in cramped quarters, (3) to officers who did not speak Spanish, and (4) who promised he would receive a lighter sentence if he gave a statement.

Police telephoned appellant and asked to meet with him. Appellant informed police he was going to San Antonio for the weekend, but would call them the following week. The police agreed. The following Monday, appellant called the police. They arrested him at his home without incident, and immediately advised appellant of his rights. Upon arriving at the police station, the officers took appellant before a magistrate where he was

again advised of his rights in satisfaction of Article 15.17 of the Code of Criminal Procedure. Later that evening, appellant signed a written statement.

■ At the suppression hearing, appellant testified that he drank seven or eight beers prior to his arrest. Intoxication, however, is not per se determinative of the voluntariness of a confession. *Nichols v. State,* 754 S.W.2d 185, 190 (Tex.Crim.App.1988). Appellant never testified that he was intoxicated or that his judgment was impaired by the alcohol. Additionally, appellant's testimony was conflicting because he also testified that he consumed only a couple of beers before his arrest. Appellant's statement was not rendered inadmissible due to his consumption of alcohol.

With regard to the conditions under which the statement was made, the record reflects that police took appellant's statement in Sergeant Harry Millo's office. It is undisputed the room was small. Appellant argues for the first time on appeal that the cramped environment may have rendered his confession involuntary. Appellant testified the police were courteous to him, and at no time during the suppression hearing did he claim the crowded conditions had any effect upon his decision to make a written statement. There is no evidence that the cramped conditions affected appellant's decision to make a statement.

■ All conversations with appellant were in English. Several police officers testified that the parties had no difficulty understanding each other. The magistrate who administered the statutory warnings to appellant testified that his admonishments to suspects are always preceded by an inquiry into whether the suspect can read and write English. The magistrate further testified he always has an interpreter available in his court. If the suspect cannot read and write English, the magistrate makes a notation to that effect on the written admonishment form. No such notation was made in this case. After appellant's statement was reduced to writing, Sergeant Millo asked appellant to read the statement out loud. Millo

testified he heard appellant read the entire statement, including the statutory warnings. The trial judge is the sole judge of the credibility of witnesses at a suppression hearing. *Rivera v. State,* 808 S.W.2d 80, 96 (Tex.Crim.App.), *cert. denied,* 502 U.S. 902, 112 S.Ct. 279, 116 L.Ed.2d 231 (1991). We are not at liberty to disturb any finding which is supported by the record. *Johnson v. State,* 803 S.W.2d 272, 287 (Tex.Crim.App. 1990), *cert. denied,* 501 U.S. 1259, 111 S.Ct. 2914, 115 L.Ed.2d 1078 (1991). The voluntariness of appellant's statement was not affected by the police officer's inability to speak Spanish.

■ The last prong of appellant's contention that his confession was involuntary rests upon his unrebutted testimony that the statement was induced by promises of leniency. On direct examination appellant was asked if the police officers ever asked him if he wanted to give a statement or speak in Spanish. Appellant did not respond directly to the question, but said the police urged him to talk by saying: "Go ahead and tell us what happened. Everything will be better for you. You will get less time." The State offered no rebuttal. During the guilt/innocence stage of the trial, Sergeant Millo stated he did not directly or indirectly promise appellant anything in exchange for his statement. No testimony was elicited to specifically rebut appellant's claims that promises of leniency were used to induce his confession. The State also did not attempt to refute appellant's suggestion that other officers may have made promises of leniency.

■ The court of criminal appeals has held that "whenever the accused's testimony reflects that he was unlawfully caused to make a written confession, and his testimony is uncontradicted, then the accused's written confession is inadmissible evidence as a matter of law." *Moore v. State,* 700 S.W.2d 193, 202 (Tex.Crim.App.1985), *cert. denied,* 474 U.S. 1113, 106 S.Ct. 1167, 89 L.Ed.2d 289 (1986). This has been the law in this state for at least two decades. See *Farr v. State,* 519 S.W.2d 876, 880 (Tex.Crim.App.1975).[1]

---

**1.** The decisions in *Moore* and *Farr* dealt with

situations where the defendants claimed the po-

We must now decide whether the officer's promise of leniency rendered the confession involuntary.

At least one police officer is alleged to have promised: "You will get less time." In evaluating the effect of this inducement, we first observe that two separate and distinct lines of cases have evolved out of the court of criminal appeals on this subject. One line of cases begins in *obiter dictum* found in *Guinn v. State*, 39 Tex.Crim. 257, 45 S.W. 694, 695 (1898). The defendant in that case was arrested for stealing cattle, and while under arrest he made no response to a verbal accusation that he was a cattle thief. The court of criminal appeals held that the defendant's silence should not have been admitted in evidence against him. Then, in dictum, the court went on to say that even if the defendant had made a response, his statement would have been inadmissible because he was incorrectly advised that any statement he made could be "used for or against him." Two weeks later, the rationale for this position was explained in *Unsell v. State*, 39 Tex.Crim. 330, 45 S.W. 1022, 1023 (1898), where Judge Davidson wrote: "To warn [the defendant] that [his statement] may be used for him would be holding out an inducement." This holding has been unhesitatingly followed and applied in numerous decisions. *See Sterling v. State*, 800 S.W.2d 513, 518 (Tex.Crim. App.1990), *cert. denied*, 501 U.S. 1213, 111 S.Ct. 2816, 115 L.Ed.2d 988 (1991); *Dunn v. State*, 721 S.W.2d 325, 341 (Tex.Crim.App. 1986); *Burton v. State*, 505 S.W.2d 811, 813 (Tex.Crim.App.1974); *McCain v. State*, 139 Tex.Crim. 539, 141 S.W.2d 613, 614 (1940); *Adams v. State*, 48 Tex.Crim. 90, 86 S.W. 334 (1905); *Glover v. State*, 76 S.W. 465, 466 (Tex.Crim.App.1903); *Perry v. State*, 42 Tex. Crim. 540, 61 S.W. 400, 401 (1901); *Pryor v. State*, 40 Tex.Crim. 643, 51 S.W. 375 (1899). Under these cases, the mere existence of the inducement is reversible error without regard to its actual impact upon the voluntariness of the confession.

In another separate and distinct line of cases, the court of criminal appeals has held that a promise will not automatically bar the admission of a defendant's statement. Rather, the court must assess the impact of the inducement and determine the likelihood of whether it adversely affected the voluntariness of the statement. Under this standard "a promise will render a confession involuntary if it: (1) is of some benefit to the accused; (2) is positive; (3) is made or sanctioned by a person in authority; and (4) is of such a character as would likely influence the accused to speak untruthfully." *Smith v. State*, 779 S.W.2d 417, 427 (Tex.Crim.App. 1989). *Also Washington v. State*, 582 S.W.2d 122, 124 (Tex.Crim.App.1979); *Fisher v. State*, 379 S.W.2d 900, 902 (Tex.Crim.App. 1964).

■■■ The two lines of cases are incompatible. Whether the court of criminal appeals intended a different and more rigid test be applied when an inducement is incorporated into the *Miranda* admonitions is not clear. We find, however, that the four-prong test articulated in *Smith v. State* satisfies our regard for the proper administration of justice and, at the same time, is less arbitrary than the "automatic" reversal required by *Guinn* and *Unsell*.

■■■ Applying the four-prong test, we hold the promise was of benefit to the accused, was not equivocal, and was made by a person in authority. The first three elements of the test are satisfied. The fourth element requires us to evaluate the degree of influence exerted by the inducement. *Fisher*, 379 S.W.2d at 902. It is not enough that an inducement *might* have evoked a statement from a mute suspect. Neither are we

---

lice *coerced* their confessions. In the case *sub judice*, appellant alleges that police *induced* his confession. We believe the underlying rationale, however, is applicable in this case. In other words, whether the defendant alleges his statement was given involuntarily by reason of coercion or inducement, we must accept the allegation as truthful when the State does not challenge, contest, explain, or controvert the allegation. *Barton v. State*, 605 S.W.2d 605, 607 (Tex.

Crim.App.1980); *Harville v. State*, 591 S.W.2d 864, 867 (Tex.Crim.App.1979); *Sinegal v. State*, 582 S.W.2d 135, 137 (Tex.Crim.App.1979); *Sherman v. State*, 532 S.W.2d 634, 635 (Tex.Crim. App.1976); *Smith v. State*, 547 S.W.2d 6, 8–9 (Tex.Crim.App.1977); *Robinson v. State*, 855 S.W.2d 107, 109 (Tex.App.—Houston [14th Dist.] 1993, no pet.); *Carr v. State*, 745 S.W.2d 51, 54 (Tex.App.—Houston [1st Dist.] 1987, no pet.).

called on to decide whether the inducement *could* have persuaded the defendant to inculpate himself. Rather, the promise made to the defendant must be of such character as would be *likely* to influence the defendant to speak *untruthfully*. *Washington*, 582 S.W.2d at 124. In other words, a promise will not render a confession involuntary unless the inducement was so great that it *probably* caused the accused to falsely inculpate himself.[2]

The test for involuntariness arising from improper *coercion* is distinctly different from the test employed to assess the effects of an improper *inducement*. Constitutional and statutory protections guard against even the taint of police *coercion*.[3] Improper *inducements*, on the other hand, must be of exceptional character before they will invalidate an otherwise voluntary confession.[4] The court of criminal appeals has held that general, but unspecific offers to help a defendant are not likely to induce him to make an untruthful statement and will not invalidate a confession. *Dykes v. State*, 657 S.W.2d 796, 797 (Tex.Crim.App.1983). Similarly, general statements made to a suspect regarding how a confession can sometimes result in leniency do not render a confession involuntary. *Muniz v. State*, 851 S.W.2d 238, 253–54 (Tex. Crim.App.), *cert. denied,* — U.S. —, 114 S.Ct. 116, 126 L.Ed.2d 82 (1993).

Even specific, unequivocal promises can lack the persuasive impact needed to show that they will probably induce an accused to make an untruthful statement. *See Muniz*, 851 S.W.2d at 253–54 (officer's promise that he would try to obtain charitable help for defendant's wife and mother was not sufficient inducement to confess to a heinous crime); *Jacobs v. State*, 787 S.W.2d 397, 400 (Tex.Crim.App.), *cert. denied,* 498 U.S. 882, 111 S.Ct. 231, 112 L.Ed.2d 185 (1990) (prom-

ise to defendant that he would be allowed to see his girlfriend was not sufficient inducement that it would likely cause him to confess); *Smith v. State*, 779 S.W.2d at 427–28 (where the defendant wanted an opportunity to take a polygraph test to prove his innocence, and the police promised that he would be examined on a polygraph, the court wrote: "[W]e fail to perceive in what way a promise of a polygraph, without more, would operate to induce an accused falsely to *inculpate* himself."); *Ortiz Salazar v. State*, 687 S.W.2d 502, 503–04 (Tex.App.Dallas 1985, pet. ref'd) (promise of leniency toward other members of theft ring was found unlikely to influence defendant to untruthfully confess to burglary).

The record reflects that appellant was advised by a magistrate that any statement he made might be used against him in court. The same warning appeared in writing at the top of his written statement. Police officers gave appellant this admonition on more than one occasion. The promise of "less time" may have contributed to the appellant's decision to make a statement, but we cannot say that the inducement *probably* caused him to *falsely* confess. Accordingly, appellant's second point of error is overruled.

In his final point of error, appellant contends that the trial court erred in denying his requested instruction on the lesser included offense of criminally negligent homicide. Before a charge on a lesser included offense is warranted, (1) the offense must be included within the proof necessary to establish the offense charged, and (2) some evidence must exist in the record that would permit a jury to rationally find that if the defendant is guilty, he is guilty only of the lesser offense. *Bignall v. State*, 887 S.W.2d 21, 23 (Tex.Crim.App.1994); *Rousseau v. State*, 855 S.W.2d 666, 672 (Tex.Crim.

---

2. The term "likely" is synonymous with "probable." BLACK'S LAW DICTIONARY 925 (6th ed. 1990); WEBSTER'S NINTH NEW COLLEGIATE DICTIONARY 692 (1991) ("in all probability: PROBABLY").

3. *See generally* U.S. CONST. amend. V; TEX. CONST. art. I § 10; TEX.CODE CRIM.PROC.ANN. art. 15.17 (Vernon 1995); TEX.CODE CRIM.PROC.ANN. art. 38.22 (Vernon 1979).

4. This distinction may have arisen because *inducements* have not traditionally been the means by which defendants have been persuaded to assist the prosecution. It was the coercive oppression of the *peine forte et dure,* not the threat of improper inducements, which haunted English dungeons. 2 FREDERICK POLLOCK & FREDERIC W. MAITLAND, THE HISTORY OF THE ENGLISH LAW 659–660 (2d ed. 1899).

App.), *cert. denied,* —— U.S. ——, 114 S.Ct. 313, 126 L.Ed.2d 260 (1993). In making this assessment, we are cognizant that if evidence from any source raises the issue of a lesser included offense, a charge on that offense must be included in the court's charge. *Saunders v. State,* 840 S.W.2d 390, 391 (Tex. Crim.App.1992).

A person acts with criminal negligence when he ought to be aware that his conduct presents a substantial and unjustifiable risk of such a nature that his failure to perceive it constitutes a gross deviation from the standard of care that an ordinary person would exercise under the same circumstances. Tex.Penal Code Ann. § 6.03(d).[5] In the context of criminally negligent homicide, criminal negligence means that the defendant should have been aware of the risk surrounding his conduct but failed to perceive it. *Burnett v. State,* 865 S.W.2d 223, 229 (Tex. App.San Antonio 1993, pet. ref'd). By his own admission, appellant armed himself with a loaded firearm. He fired multiple rounds at a pickup truck and shot randomly into the crowd. Construing the evidence in the light most favorable to appellant, it is possible that he fired at no specific person and had no intention of hitting any individual. However, there is no evidence that appellant was unaware of the risk his actions posed to the safety of those he sought to intimidate.

Criminally negligent homicide is included within the proof necessary to establish the offense of murder; thus, the first element of the *Rousseau* test is met. There is, however, no evidence to suggest that appellant, if guilty, was guilty only of the lesser included offense of criminally negligent homicide. *See Thomas v. State,* 699 S.W.2d 845, 850 (Tex.Crim.App.1985) (finding testimony showed awareness of risk in exhibiting a possibly loaded gun and did not therefore require an instruction on criminally negligent homicide); *Henderson v. State,* 825 S.W.2d 746, 751 (Tex.App.Houston [14th Dist.] 1992, pet. ref'd) (finding appellant could not have

been found guilty only of criminally negligent homicide because of awareness of risk in striking person with a loaded gun). Accordingly, appellant's third point of error is overruled.

The judgment of the trial court is affirmed.

---

5. The date of the offense in this case occurred before September 1, 1994, which is the effective date of the revised penal code. *See* Acts 1993, 73rd Leg., Ch. 900, § 1.18(b). All references to the penal code in this opinion are to the code in effect at the time of the offense.